No. 44,074

STATE OF KANSAS, *Appellee*, v. JOHNNY VICTOR FELTON, *Appellant*.

(399 P. 2d 817)

Opinion filed March 6, 1965.

*James M. Brewster*, of Mission, argued the cause and was on the briefs for the appellant.

*Bernis G. Terry*, Assistant County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Hugh H. Kreamer*, County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from an order of the district court of Johnson County, Kansas, denying appellant's motion under K. S. A. 60-1507 to vacate, set aside or correct a prior judgment and sentence of that court in a criminal action.

The facts required for a proper understanding of the issue involved on appellate review will be related as briefly as the state of the record permits.

On March 23, 1956, appellant, who at all times was represented by competent court-appointed counsel, was convicted by a jury in the district court of Johnson County of the crime of robbery in the first degree, as defined by G. S. 1949, 21-527 (now K. S. A. 21-527), which was alleged in the amended information to have occurred on November 17, 1954.

On April 2, 1956, his motion for a new trial having been over-ruled, appellant appeared before the court for sentencing and, pursuant to appellee's notice to proceed under the Habitual Criminal Act (G. S. 1949, 21-107a [now K. S. A. 21-107a]), the court received in evidence, without objection, an authenticated copy of appellant's conviction, on December 14, 1954, of the crimes of burglary and grand larceny, in the district court of Sedgwick County.

Thereupon, in view of his previous felony conviction in Sedgwick County, appellant was sentenced by the district court of Johnson County to confinement and hard labor in the Kansas State Penitentiary under G. S. 1949, 21-530 (now K. S. A. 21-530) and 21-107a, *supra*, for not less than twenty nor more than forty-two years, and took no appeal from his judgment and sentence.

In passing we note there is nothing in the record disclosing the date upon which the crimes resulting in the Sedgwick County conviction were committed. However the record does definitely reflect that appellant's conviction and sentence in the Sedgwick County court occurred approximately a month after the date on which he was charged with having committed the Johnson County offense. Thus it becomes obvious that the commission of the Johnson County offense of November 17, 1954, antedated the Sedgwick County conviction and sentence of December 14, 1954.

On May 4, 1964, pursuant to the provisions of K. S. A. 60-1507, appellant filed a motion in the district court of Johnson County to vacate, set aside and correct his judgment and sentence of April 2, 1956. This motion was overruled on May 6, 1964. On May 28, 1964, appellant filed a petition for rehearing which was overruled on the same day. Later, and on June 25, 1964, appellant filed a notice of appeal from the court's order of May 6, 1964, an affidavit to proceed in *forma pauperis*, and a motion for court appointment of counsel. On the same day the court entered an order wherein it authorized appellant to proceed in *forma pauperis*, and appointed James M. Brewster, a competent attorney of Mission, to represent him for the purpose of this appeal. Mr. Brewster accepted that responsibility and since his appointment has filed a proper record and brief and orally argued the cause on the date appellant's appeal was heard by this court on its merits.

Boiled down the over-all issue raised by appellant in the instant case may be stated thus:

That at the time of sentencing appellant in the Johnson County court it was erroneous and improper for that court to apply the

Habitual Criminal Act (K. S. A. 21-107a) where the authenticated copy of a prior conviction in Sedgwick County, which was relied upon by the sentencing court as requiring the application of such act, affirmatively disclosed that such prior conviction had been obtained, as shown by the amended information and the verdict of the jury in the Johnson County case, after the commission of the offense resulting in the second conviction.

From the foregoing issue, supported by an uncontroverted record from the standpoint of controlling facts on which it is based, it appears that we are confronted with a question of law that, contrary to contentions advanced by appellee, can properly be raised by motion pursuant to existing provisions of K. S. A. 60-1507 which, so far as here material, read:

"(a) *Motion attacking sentence.* A prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the . . . laws of the State of Kansas, . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may at any time move the court which imposed the sentence to vacate, set aside or correct the sentence.

"(b) *Hearing and judgment* . . . If the court finds . . . that the sentence imposed was not authorized by law or is otherwise open to collateral attack, . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

"(d) *Appeal.* An appeal may be taken to the supreme court from the order entered on the motion as from a final judgment on application for a writ of habeas corpus."

For an interesting discussion, supporting what has just been stated and dealing at length with the right afforded to prisoners under the provisions of 60-1507, *supra,* as implemented by this court's Rule No. 121 (now appearing in Volume 193, Advance Sheet No. 4 of the Kansas Reports), see the first three pages of the opinion in *State v. Richardson,* 194 Kan. 471, 399 P. 2d 799.

The issue, to which we have previously referred, requires consideration and construction of our Habitual Criminal Act, K. S. A. 21-107a, which reads:

"Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the penalty of the second conviction, and if convicted a third time of felony, he shall be confined in the penitentiary for a period of not less than fifteen years. Judgment in such cases shall not be given for the increased penalty, unless the court shall find, from the record and other com-

petent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state."

Inherent in the over-all issue involved, when it is stripped of all excess verbiage, is the decisive question whether, in order to enhance punishment under the Habitual Criminal Act, the offense on which a second or subsequent conviction is based (here the Johnson Connty offense of November 17, 1954) must, from the standpoint of the date of its commission, follow the date of the first conviction (here the Sedgwick County conviction of December 14, 1954).

With commendable candor, counsel for the respective parties concede they have been unable to find any Kansas decisions wherein the foregoing decisive question has been either considered or determined and our extended research has failed to disclose any. However, it may be stated, this court has frequently dealt with the subject of the fundamental purpose and objective of the Habitual Criminal Act.

In the early case of *State v. Woodman,* 127 Kan. 166, 272 Pac. 132, where the validity of the act, as it existed in 1928, was first challenged, the court made the following statement:

". . . Formerly the imposition of the sentence was left to the discretion of the trial judge within limitations, and it was common for old offenders and hardened criminals to receive severe sentences while first offenders convicted of the same crime were leniently dealt with. *And it is a salutary provision of law that criminals whom the law's discipline has hitherto failed to reform by prior conviction and punishment should form a class to be more severely punished than first offenders. . . .*" (p. 171.) (Emphasis supplied.)

Later, and with respect to the same subject, Justice Jochems, concurring specially, in the case of *State v. Close,* 130 Kan. 497, 287 Pac. 599, had this to say:

"Our legislature evidently had the above act [referring to a somewhat similar law of the State of New York, commonly referred to as the 'Baumes' law] before it. While it saw fit to change the language and to enact a more severe law by providing life imprisonment for a third conviction of felony, instead of a fourth conviction, as the New York law does, *yet it had in mind the same purpose and object as the New York legislature, namely, to provide additional penalties for the commission of felonies subsequent to the first one, and thereby strive to deter the criminally inclined from repeated felonies.*" (p. 503.) (Emphasis supplied.)

In a more recent case, *State v. Ricks,* 173 Kan. 660, 250 P. 2d 773, we held:

"The increased punishment for a second and third conviction of a felony, provided by our habitual criminal law, G. S. 1949, 21-107a, is imposed as a disciplinary measure for those whom previous conviction and punishment have failed to reform." (Syl. ¶ 1.)

And in the opinion said:

"The avowed purpose and salutary provisions of the habitual criminal law as a disciplinary measure for *those whom previous conviction and punishment have failed to reform* were stated early in *State v. Woodman,* supra, and need not be repeated here." (p. 661.) (Emphasis supplied.)

Still later in *Johnson v. Crouse,* 191 Kan. 694, 383 P. 2d 978, we said:

". . . Our habitual criminal act merely provides a more severe penalty for the commission of a felony by an habitual criminal than by one who is a first time offender. . . ." (p. 700.)

Although, as heretofore indicated, there are no cases from this jurisdiction dealing with the precise question now under consideration, there is no occasion here to write a thesis on the subject for it has been dealt with elsewhere on numerous occasions. For a recent and comprehensive annotation, entitled, "Chronological or procedural sequence of former convictions as affecting enhancement of penalty for subsequent offense under habitual criminal statutes," see 24 A. L. R. 2d, Anno., pp. 1247 to 1280, incl., citing numerous cases from foreign jurisdictions, where the following general statement appears:

"A review of the cases herein reveals, as might be expected, a difference in the phraseology of habitual criminal statutes of the various jurisdictions or states. For instance, some statutes provide for the enhanced penalty upon conviction of a subsequent 'offense,' and do not expressly provide that, in order to be available for enhancement of the penalty, the subsequent offense be committed after the conviction of the prior offense. Other statutes provide for the increased penalty for a previous 'conviction,' or words of similar import, and also fail to specify particularly as to the chronological order of the commission and conviction of the previous offenses. Still other statutes specifically stipulate that the principal offense for which defendant is convicted be committed 'after' previous conviction or convictions. But, regardless of the difference in phraseology, the preponderance of authority supports the view that the prior convictions, in order to be available for imposition of increased punishment of one as a habitual offender, must precede the commission of the principal offense, that is, the latest prosecution in point of time. In this connection, it has been brought out in numerous cases that, although differing somewhat in language, the same principle is inherent in a habitual criminal statute, namely, that the legislature in enacting such a statute intended it to serve as a warning to first offenders and to afford them an opportunity to reform, and that the reason for the infliction of severer punishment for a repetition of offenses is not so much that defendant has sinned more

than once as that he is deemed incorrigible when he persists in violations of the law after conviction of previous infractions." (pp. 1248, 1249.)

After correlating all known cases dealing with the subject the annotator reaches the conclusion that, as applied by the courts of the United States, there is a majority rule and a minority rule.

With respect to the majority rule the following statement appears in the annotation:

"The general rule, embodied in specific terms in some statutes and implied from the phraseology of others referring in more general terms to previous convictions or subsequent offenses, is that it is a prerequisite that the prior conviction or convictions precede the commission of the principal offense in order to enhance the punishment under habitual criminal statutes." (p. 1249.)

As to the minority rule it is said:

"A few cases subscribe to the rule that conviction of the previous offense or offenses does not have to antedate the commission of the primary offense." (p. 1252.)

For further annotations supplementing 24 A. L. R. 2d. Annotations, pp. 1247 to 1280, incl., see 2 A. L. R. 2d Supplement Service For Annotations (1960) and subsequent Supplement Service For Annotations (1962), (1963) and (1964). See, also, 25 Am. Jur., Habitual Criminals, §§ 10, 12, pp. 265, 266.

Nothing would be gained by extended analysis of the many decisions listed and discussed in the foregoing annotations. It suffices to say, we have carefully reviewed such decisions, especially those dealing with habitual criminal statutes similar to our own (21-107a, *supra*), and have concluded that the great weight of authority, as well as the better reasoned cases, hold it is a prerequisite that the prior conviction or convictions precede the commission of the principal offense in order to enhance the punishment under the habitual criminal statutes. Moreover, in this a case of first impression, and particularly in view of what it has said and held in its decisions dealing with the subject of the fundamental purpose and objective of our Habitual Criminal Act, this court is in accord with the majority rule as previously announced, to which we adhere. Therefore, we are impelled to hold that, since the undisputed facts of record are that the prior conviction here involved did not precede—but followed—the commission of the principal offense, the trial court's action in invoking the act to increase the punishment for the principal offense was not warranted and cannot be upheld.

The conclusion just announced does not mean that appellant is entitled to be released from custody. The record is clear that in

the Johnson County case the information charged, and the defendant was convicted by a jury of, the crime of robbery in the first degree, as defined by 21-527, *supra,* and that proper sentence should have been imposed under 21-530, *supra.*

Therefore, under the authority of *Richardson v. Hand,* 182 Kan. 326, 320 P. 2d 837; *Johnson v. Hand,* 189 Kan. 103, 367 P. 2d 70; *Wiles v. Board of Probation & Parole,* 191 Kan. 705, 383 P. 2d 969; *McQueen v. Crouse,* 192 Kan. 821, 391 P. 2d 68, it is ordered and directed that the appellant be taken by the proper authorities before the district court of Johnson County and that such court impose a proper sentence in accord with the provisions of K. S. A. 21-530, in the original case.

Finally it should be stated that it cannot be said the original sentence in the district court, although irregular, furnishes no purpose whatsoever. It does fix the time at which the corrected sentence begins to run. See *e. g., State v. Cox,* 194 Kan. 120, 397 P. 2d 406, where it is said:

". . . However, it may be stated that although the original sentence is void the corrected sentence commences to run from the time of the commitment under the void sentence. And added that where time has been served under a void sentence it necessarily results that the amount of time so served must be credited on the corrected sentence." (p. 124.)

The order denying appellant's motion to set aside and correct his prior sentence is reversed and the trial court is directed to re-sentence appellant in the original case in accord with the views herein expressed.