No. 44,863

STATE OF KANSAS, *Appellee*, v. ROBERT MURRAY, a/k/a ALFRED W. MURRAY, *Appellant.*

(437 P. 2d 816)

Opinion filed March 9, 1968.

*David C. All,* of Wichita, argued the cause and was on the briefs for the appellant.

*A. J. Focht,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a conviction and sentence in a prosecution for grand larceny resulting from aiding and abetting in the theft of two men's suits.

The state's evidence disclosed facts substantially as follows. On the evening of May 5, 1966, the defendant, a Negro male, entered the J. C. Penney's Store in Eastgate Shopping Center in Wichita, Kansas. He was accompanied by a Negro woman and a Mexican girl. The three began moving about the racks on which men's suits were being displayed. The manager of the men's department became suspicious and placed the three under surveillance. The defendant picked up two dress shirts, paid for them without looking at the size and left the store. The two women left the store

and it was noted that there was a wide space in the suit rack where there had been suits previously. The manager directed an employee to follow the women out of the store.

The employee followed the women and saw them walking in the mall area in a manner which he described as pigeon toed. He started running towards them and part of a suit dropped out from between the legs of the younger of the two women. He requested that they return to the store but they refused. He went to the store and started knocking on the window for assistance. He turned around in time to see that each woman was stuffing a suit into a trash can. He got the suits out of the can and began following the girls. They split up and he followed the younger girl for a while, with the manager, who had come on the scene, following the colored woman. When their paths crossed, the men switched women which left the employee following the colored woman. She turned around and slapped him about a bit, landing a few rights to his jaw.

The defendant then drove up in a pink and white Oldsmobile, got out of the car and the colored woman ran over and got in. The employee took out his pencil and paper and started to write down the license number of the car and the defendant knocked the pencil and paper from his hand, stating, "Don't take my license number down." At that time the younger of the two women arrived followed by the manager. The defendant and the woman then got into the car and left after being told by the manager to wait until the police arrived.

The defendant was informed against as for grand larceny; he was convicted, and sentenced under the habitual criminal act as for a third felony conviction. He has appealed alleging numerous trial errors.

The appellant first contends that the trial court erred in not granting a new trial because of prejudicial remarks made in the prosecutor's closing argument.

We find no merit in the contention. The defendant would so construe the prosecutor's closing argument as to have him referring to the appellant's failure to testify. We do not so interpret the comments.

While counsel for appellant was making his closing argument to the jury he asked the question:

". . . I will ask you if this defendant had something to do with this why weren't we permitted everybody to testify? We were told that he entered the store with two Negro women, one witness said that or maybe two. We heard another witness or two say, well, one was a Mexican female, one was a Negro female. But do we get the benefit of their testimony? No. . . ."

In his closing argument the prosecuting attorney answered as follows:

". . . All right, Mr. Wendelken says you haven't heard all about this case, why didn't you hear from Pat Jackson and the others? They are available for them to call as well as us, the law provides the same treatment for them as it does for us.

"Mr. Wendelken: If it please the Court I object to this on the grounds it is contrary to the instructions.

"Mr. Focht: It is not contrary to the instructions or the law.

"The Court: No, I don't think it is either.

"Mr. Focht: And the reason I am not going to put them on is I'm not going to put on a witness that I don't think is going to tell the truth, that's why. And I assume that's why they weren't put on, period. Because they weren't trustworthy, because they are thieves, because they are not honest and because I wouldn't want this jury to make a determination based on their testimony because I wouldn't trust them. . . ."

It is clear that both attorneys were referring to the two women. The state could not have forced the appellant to testify as a witness. The appellant, through his counsel, asked the question and got his answer. He is not now in position to complain. (*State v. Hartsock,* 144 Kan. 227, 58 P. 2d 1144.)

The appellant contends that the trial court erred in supplementing its instruction on circumstantial evidence by adding the following:

"In many cases circumstantial evidence is the most convincing of all evidence; more convincing than direct testimony. A witness may be mistaken, self-deceived or untruthful. Facts and circumstances are definite and impartial."

We cannot find how, under the circumstances in this case, the appellant was in any way prejudiced by the instruction. The circumstantial evidence was to be applied equally in considering innocence or guilt.

The appellant relies on *State v. Scott,* 117 Kan. 303, 235 Pac. 380. In that case the trial court supplemented its instruction on circumstantial evidence as follows:

" 'And I further instruct you that, when the evidence in a case consists of a chain of well authenticated and proven circumstances, it is often more convincing and satisfactory and gives a stronger ground of the assurance of the defendant's guilt than the direct testimony of witnesses, unconfirmed by circumstances.' " (p. 324.)

This court considered the instruction and stated:

"This paragraph is objected to, first, because it places circumstantial evidence upon a higher plane than positive evidence, and second, because it deals with circumstantial evidence only as it applies to guilt, when in fact it may be as potent to prove innocence as it is to prove guilt. Both points are well taken. The paragraph should not have been included in the instructions. An instruction in the same language was held nonprejudicial in *The State v. Evans,* 115 Kan. 538, 540, 224 Pac. 492, where is [sic] was construed as meaning that 'well authenticated and proven circumstances' might be more convincing than the testimony of witnesses who might not be telling the truth. But when jurors must be informed of the circumstances by the testimony of witnesses, there may be false testimony concerning circumstantial evidence as well as positive evidence. (See, 1 Wigmore on Evidence, 2d ed., § 26, and authorities there cited; also 16 C. J. 763.)" (p. 324.)

It will be noted that the instruction in the *Scott* case dealt with circumstantial evidence only as applied to guilt and gave it no potency to prove innocence. In the case under consideration the instruction gave circumstantial evidence the same potency to prove either innocence or guilt.

What has been said should not be understood as placing our approval on the instruction. This court disapproves any instruction by which the trial court attempts to stress the comparative weight or potency of any particular type of competent evidence.

We next note appellant's rather frivolous contention that the trial court erred in not instructing the jury on the lesser included offense of petit larceny.

It will suffice to say that the goods found to be stolen consisted of two men's suits each of a value of at least $42.00 or a total of $84.00. There was no evidence to sustain a conviction of petit larceny. A trial court should not instruct on lesser offenses when there is no evidence to sustain them. (*State v. Fletcher,* 174 Kan. 530, 256 P. 2d 847; *State v. Lytle,* 177 Kan. 408, 280 P. 2d 924; *State v. Diggs,* 194 Kan. 812, 402 P. 2d 300.)

We are constrained to agree with the appellant's contention that he was improperly sentenced under the habitual criminal act. The act insofar as material here provides:

"Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the penalty of the second conviction; and if convicted a third time of felony, he shall be confined in the penitentiary for a period of not less than fifteen years. . . ." (K. S. A. 21-107a.)

The appellant had previously, January 20, 1958, pled guilty to second degree burglary and larceny growing out of a single taking. On being so informed the trial court considered the 1958 sentence as on two separate convictions and sentenced the defendant on the present conviction as if "convicted a third time of felony."

In 24 A. L. R. 2d 1262 we find the general rule stated as follows, and the cases are annotated supporting it:

"The majority of the cases in which the courts have construed statutes which, in substance, provide for enhancement of the punishment of one previously convicted, hold that where there were two or more convictions on as many indictments or on two or more counts in the same indictment, only one of them may subsequently be utilized as a previous conviction within the contemplation of habitual criminal statutes."

Although there are no cases from this jurisdiction dealing directly with the question, what has been said appears to be in harmony with the general rule. In *State v. Woodman,* 127 Kan. 166, 272 Pac. 132, we stated the purpose of the habitual criminal act as follows:

". . . Formerly the imposition of the sentence was left to the discretion of the trial judge within limitations, and it was common for old offenders and hardened criminals to receive severe sentences while first offenders convicted of the same crime were leniently dealt with. And it is a salutary provision of law that criminals whom the law's discipline has hitherto failed to reform by prior conviction and punishment should form a class to be more severely punished than first offenders. . . ." (p. 171. See, also, *State v. Ricks,* 173 Kan. 660, 250 P. 2d 773.)

Because two offenses grow out of a single act the actor has not become an habitual offender. In *Johnson v. Crouse,* 191 Kan. 694, 383 P. 2d 978, we said:

". . . Our habitual criminal act merely provides a more severe penalty for the commission of a felony by an habitual criminal than by one who is a first time offender. . . ." (p. 700.)

The habitual criminal act was passed in the hope of bringing about a reformation of criminals by an increased penalty for a second offense and when that hope of reformation had passed then the increased punishment should be meted out for the third offense. The following statement was applied in *State v. Felton,* 194 Kan. 501, 504, 399 P. 2d 817, covering the purpose of the act:

" '. . . While it saw fit to change the language and to enact a more severe law by providing life imprisonment for a third conviction of felony, instead of a fourth conviction, as the New York law does, *yet it had in mind the same purpose and object as the New York legislature, namely, to provide additional*

*penalties for the commission of felonies subsequent to the first one, and thereby strive to deter the criminally inclined from repeated felonies.'"*

The *Felton* case is also authority for the statement that the appellant could not have been sentenced as for a second felony conviction under the 1958 conviction. We are forced to conclude that a convict must be subject to sentence for a second felony conviction before he can be sentenced for a third felony conviction. The appellant was improperly sentenced for conviction of a third time felony. He should have been sentenced as for a second time felony conviction.

The judgment is affirmed as to the conviction, reversed as to the sentence and the case is remanded to the district court with instructions to have the defendant returned and the sentence corrected in accordance with the views herein expressed.

APPROVED BY THE COURT.