No. 45,234

STATE OF KANSAS, *Appellee,* v. HAROLD H. FAIDLEY, *Appellant.*

(450 P. 2d 20)

Opinion filed January 25, 1969.

*Cliff W. Ratner,* of Wichita, argued the cause, and *Payne Ratner, Louise Mattox, Payne H. Ratner, Jr., R. R. Barnes, E. L. Kinch* and *Patrick L. Dougherty,* all of Wichita, were with him on the brief for appellant.

*James Z. Hernandez,* of Wichita, argued the cause, and *Robert C. Londerholm,* Attorney General, *Keith Sanborn,* County Attorney, and *David P. Calvert,* Deputy County Attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant, Harold H. Faidley, was tried by a jury and convicted of the offense of driving a motor vehicle while under the influence of intoxicating liquor, in violation of K. S. A. 8-530. He has appealed, and asserts the following assignment of error:

"The court erred in permitting the arresting highway patrol officer to testify to his observation of the defendant's performance of the heel-to-toe balance test which the officer ordered the defendant to perform prior to advising him of his constitutional rights under the Fifth and Sixth Amendments to the Constitution of the United States."

The facts are not in dispute and are summarized: At about 10:50 p. m., on April 1, 1967, Lee Schuler, an officer of the Kansas Highway Patrol, was driving south on U.S. 81 Highway, north of Wichita. U.S. 81 is a four-lane highway with two lanes for southbound traffic and two lanes for northbound traffic. Schuler observed a 1966 Chevrolet pickup truck traveling south on the highway at about 35 miles per hour. As he was overtaking the pickup, he observed it weaving two or three feet into the left lane next to the median. This occurred three or four times. At one point it weaved to the right and went off the roadway and onto the shoulder approximately two feet. Shortly thereafter, Schuler stopped the pickup with his red light.

Schuler approached the driver's side of the pickup and the defendant was seated behind the steering wheel; he was alone in the vehicle. Schuler detected a moderate smell of some type of intoxicating liquor. He asked to see the defendant's driver's license. After the defendant produced the license from his billfold, Schuler asked him to get out of the vehicle, which he did. His balance was uncertain and he leaned up against the bed of the pickup to steady himself. Schuler then asked the defendant to step behind the pickup into the lights of the patrol car. The following is an excerpt of Schuler's testimony which was admitted over the defendant's objection, and involves the point raised in this appeal:

"Q. . . . And what transpired back of the pickup?

"A. Then I asked him for a coordination test which is walking heel-to-toe, or walking a straight line.

"Q. And did he perform this test for you?

"A. Well, he tried, yes.

"Q. You say he tried. What do you mean, Officer—Trooper?

"A. Well, he couldn't walk heel-to-toe, so I placed him in the patrol vehicle."

Schuler testified that when he placed the defendant in the patrol car he arrested him for driving while under the influence of intoxicating liquor, and then fully advised him of his constitutional rights in accordance with *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2nd 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974.

When Schuler and the defendant arrived at the county jail, the defendant was required to perform other coordination tests, but he made no objection to the officer's testimony concerning observations of those tests.

The defendant argues that the privilege against self-incrimination as contained in the Fifth Admendment to the Constitution of the United States (*Malloy v. Hogan,* 378 U. S. 1, 12 L. Ed. 2d. 653, 659, 84 S. Ct. 1489), that "[n]o person shall be . . . compelled in any Criminal Case to be a witness against himself . . .", protects an accused from being compelled to incriminate himself in any manner. He contends its provisions are broad enough to include physical acts of a testimonial nature such as coordination and sobriety tests, and asserts that testimony of another of the manner in which such tests were performed is as obnoxious to the constitutional right as self-incrimination through the expediency of compelling such results from the defendant's own mouth.

The defendant cites *Miranda* in support of his contention, which he states holds that the privilege against self-incrimination applies where the accused is in the custody of the police at the police station or is otherwise deprived of his freedom of action in any significant way. He argues that under our statute (K. S. A. 62-1202) and our decisions (*State v. Martin,* 89 Kan. 678, 131 Pac. 1190; *State v. Cook,* 194 Kan. 495, 399 P. 2d 835) he was restrained when Schuler required him to stop with the red light, and he was thereby deprived of his freedom of action in a substantial way. He then argues that the *Miranda* warnings which he states he must be advised of, became an absolute prerequisite in overcoming the inherent pressures of performing the test under the direction and command of the patrolman, and, lacking such warnings, the district court committed reversible error in admitting the testimony.

As preliminary, it should be noted this case presents no question of the admissibility in evidence of anything the defendant said in or out of the pickup before he was placed in the patrol car which implicates his privilege against self-incrimination. The state introduced no such evidence as a part of its case. The sole question pre-

sented is the admissibility of the result of the test performed on the highway.

Although the defendant does not invoke the privilege of silence guaranted him by Section 10 of the Kansas Bill of Rights which provides that "[i]n all prosecutions . . . [n]o person shall be a witness against himself . . .," we think the section must be considered. The provisions of the Fifth Amendment grant no greater protection against self-incrimination than does Section 10 of the Bill of Rights. (*State v. Hill*, 189 Kan. 403, 412, 369 P. 2d 365, 91 A. L. R. 2d 750.) The conclusion is not based upon the use of the word "witness" in either provision. The manifest purpose of the constitutional provisions, both state and federal, is to prohibit the compelling of self-incriminating testimonial or communicative acts from a party or a witness, and "the liberal construction which must be placed upon constitutional provisions for the protection of personal rights would seem to require that the consitutional guaranties, however differently worded, should have as far as possible the same interpretation . . ." (*Counselman v. Hitchcock*, 142 U. S. 547, 584, 585, 35 L. Ed. 1110, 1121, 12 S. Ct. 195.) See, also, *Schmerber v. California*, 384 U. S. 757, 16 L. Ed. 2d 908, 914, 86 S. Ct. 1826, and 8 Wigmore, Evidence, § 2252 (McNaughton rev. 1961). Whether the privilege contained in Section 10 may be invoked by a suspect or an accused is determined by the same tests applicable as to whether the testimonial product or act violates due process of law under the Fourteenth Amendment. In *Malloy v. Hogan*, supra, it was held that:

". . . [t]he Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." (p. 8.)

While it has been held that the rule of *Miranda* begins to operate when an individual is taken into custody or is otherwise deprived of his freedom of action in any significant way (*Miranda v. Arizona*, supra, L. Ed. 2d p. 706; *State v. Gillespie*, 100 N. J. Super. 71, 241 A. 2d 239), the issue of this appeal hinges upon the scope of the privilege against self-incrimination as contained in Section 10 of the Bill of Rights and the Fifth Amendment. Cases such as *Lee v. State*, 187 Kan. 566, 358 P. 2d 765 and *Hazlett v. Motor Vehicle Department*, 195 Kan. 439, 407 P. 2d 551, involving administrative proceedings under the Motor Vehicle Act, are not involved.

The scope of the self-incriminating clause of the Fifth Amendment was before the Supreme Court of the United States in *Schmerber v. California*, supra, which was decided after *Miranda*. It was held that the defendant's constitutional rights protected by the Fourth, Fifth and Sixth Amendments had not been violated by compelling him to submit to a withdrawal of a sample of his blood for analysis for alcohol content and the admission in evidence of the analysis report. In the opinion it was said:

". . . both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. *The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."* (l. c. 764.) (Emphasis supplied.)

That holding was supported by *Holt v. United States*, 218 U. S. 245, 54 L. Ed. 1021, 31 S. Ct. 2, where the question arose whether a blouse belonged to the defendant. A witness testified at the trial that the defendant put on the blouse and it had fit him. It was contended that the admission of the evidence was error because compelling him to put on the blouse was a violation of his privilege. The claim was rejected as "an extravagant extension of the Fifth Amendment." Mr. Justice Holmes, speaking for the court, said:

". . . [t]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material . . ." (pp. 252, 253.)

The principle of *Holt* and *Schmerber* was reaffirmed in the subsequent case of *United States v. Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, where it was said that none of the activities stated in *Schmerber*, heretofore quoted, becomes testimonial within the scope of the privilege because required of the accused in a pretrial confrontation.

We have no doubt that compelling the defendant merely to perform the coordination or sobriety test on the highway for observation by the patrolman involved no compulsion of the accused to give evidence having testimonial significance. At most, it was compulsion of the defendant to demonstrate his ability to walk, after being requested to walk in a particular manner. There was no forced communication by the defendant to disclose any knowledge he

might have "from his own mouth." (*Miranda v. Arizona*, supra, L. Ed. 2d p. 715.)

This case presents no difference in principle from compelling Schmerber to provide a blood sample or Holt to put on the blouse, and, as in those instances, is not within the scope of the privilege. In short, the potential application of the rule of *Miranda* became irrelevant to the defendant's nontestimonial conduct on the highway which Schuler put in evidence by detailing the results of the coordination or sobriety test. (*State v. Gillespie*, supra.) The privilege of silence guaranteed by Section 10 of our Bill of Rights and the Fifth Amendment was not abridged by the use of the evidence at the time it was introduced. Our own cases tend to support this conclusion: *State v. Freeman*, 195 Kan. 561, 565, 566, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981, and *State v. Patterson*, 200 Kan. 176, 181, 434 P. 2d 808.

We have examined *Spencer v. State*, Okl. Cr., 404 P. 2d 46, and *Apodaca v. State*, Tex. Crim. App., 146 S. W. 2d 381, relied upon by the defendant, where different conclusions were reached. While we have the highest respect for the criminal courts of appeals of those jurisdictions, we decline to follow those decisions. They were decided prior to *Schmerber* and are factually different in point of application. Moreover, no claim of violation of the Fifth Amendment was presented in either case.

The defendant lastly claims that the results of the coordination or sobriety test were inadmissible because they were obtained in violation of his rights under the Sixth Amendment to the assistance of counsel. The point is not well taken. Schuler clearly had reasonable grounds to stop the pickup, and the test was required to ascertain whether he had probable cause to believe that the defendant was under the influence of intoxicating liquor, and thus driving the vehicle in violation of K. S. A. 8-530. To the extent that his argument is based upon alleged deprivation of his *Miranda* rights to assert the privilege against self-incrimination, he was not deprived of the assistance of counsel. (*Schmerber v. California*, supra, L. Ed. 2d p. 917. That was a non-existent right which he could not assert. The failure to advise the defendant of his right to counsel to assert a theoretical right which would have been futile was, in our opinion, harmless beyond a reasonable doubt. (*Chapman v. California*, 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) We agree with the following quotation from *Commonwealth v. Wilbur*, 353 Mass. 76 (1968), 231 N. E. 2d 919.

". . . We think the warning principles announced in the *Miranda* case must be applied reasonably and with common sense and do not constitute an arid, ritualistic formula to be administered inflexibly. We assume that the principles are designed to achieve the substance of protection of defendants requiring protection and not to penalize (for minor and non-prejudicial failure to adhere to a precise formula) law enforcement officials intelligently attempting in good faith to afford arrested persons considerate treatment and due process of law . . ." (231 N. E. 2d pp. 923, 924.)

The district court did not err in overruling the defendant's motion for a new trial where the point relied upon was considered and overruled. The judgment is affirmed.