No. 47,711

STATE OF KANSAS, *Appellee*, v. KENNETH A. HAZE, *Appellant*.

(542 P. 2d 720)

Opinion filed November 8, 1975.

*Richard L. Hilton,* of Wichita, argued the cause and was on the brief for the appellant.

*Robert L. Kennedy, Jr.,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, and *Keith Sanborn,* District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant, Kenneth A. Haze, appeals from convictions by a jury of felony theft (K. S. A. 21-3701 [*d*] [receiving stolen property]), possession of a firearm after conviction of felony (K. S. A. 21-4204 [1] [*b*]), and possession of barbiturates and amphetamines with intent to sell in violation of K. S. A. and K. S. A. 1974 Supp. 65-4101, *et seq.,* [65-4124-4127, Repealed, Laws 1973, Ch. 259, Sec. 5]. The issues presented on appeal stem from defendant's refusal to supply exemplars of his handwriting.

Following the burglary of a private residence in Wichita a search warrant was obtained by police officers who searched an apartment occupied by defendant. The search resulted in the seizure of a

number of articles, which had been reported stolen in the burglary, and also a quantity of barbiturates and amphetamines. The officers also discovered a spiral notebook, which contained lists of various drugs, the prices thereof, and a list of names of persons believed to be involved in drug traffic. During the search the officers also found three handwritten notes signed "Kenny." In order to establish the authorship of the notes and to identify the handwriting in the notebook, the state moved the trial court for an order requiring the defendant to provide the state with handwriting exemplars. Defendant's counsel informed the trial court that defendant's refusal to comply with the court's order was upon the advice of counsel. The court specifically advised the defendant that he had no constitutional right to refuse to give the exemplars; that he could be held in contempt for his refusal or, in the alternative, that the prosecution would be permitted to use the fact of his refusal as evidence against him at trial. Defendant stood firm on his refusal and evidence thereof was admitted through the testimony of a detective. The court overruled defendant's objection and instructed the jury as to the manner in which it might consider defendant's refusal.

Defendant concedes that the United States Supreme Court in *Gilbert v. California*, 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, made clear that the compelling of handwriting exemplars is not a violation of the rights of an accused under the Fifth Amendment to the Constitution of the United States. In *Gilbert* the court analogized the giving of exemplars with the exhibiting of an accused's person in a line-up (*United States v. Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926) and the withdrawal of blood for a blood-alcohol examination (*Schmerber v. California*, 384 U. S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826) and had this to say:

". . . The taking of the exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of "real or physical evidence". . . .' *Schmerber v. California*, 384 U. S. 757, 763-764. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. *United States v. Wade, supra*, at 222-223. . . ." (pp. 266-267.)

The defendant takes the position that even though he could be ordered to provide an exemplar and on refusal held in contempt, nevertheless, the refusal to provide exemplars constituted testimonial by-product and as such was inadmissible.

In support of his position defendant fails to cite any cases specifically dealing with the giving of handwriting exemplars. Defendant does cite four cases dealing with refusal by an accused to submit to a breathalyzer test, or to give blood for a blood-alcohol test. (*Gay v. City of Orlando,* [Fla. App.], 202 So. 2d 896; *State v. McCarthy,* 259 Minn. 24, 104 N. W. 2d 673; *Johnson v. State,* 125 Ga. App. 607, 188 S. E. 2d 416; and *Engler v. State,* [Okla. Cr. App.], 316 P. 2d 625.) The cases cited stand for the proposition that while the test itself may not be testimonial, the refusal to take it is. In his brief defendant concedes that the cases cited represent a minority view. In each of the cases cited the accused had a statutory right to refuse the sobriety test involved. K. S. A. 1974 Supp. 8-1001 providing for the giving of chemical tests contains a statutory right of refusal similar to the statutory rights of refusal set out in the cases cited by defendant. On this point 8-1001 provides:

". . . If the person so arrested refuses a request to submit to the test, it shall not be given. . . ."

Discussions concerning this aspect of 8-1001 may be found in *State v. Faidley,* 202 Kan. 517, 450 P. 2d 20; and *Lee v. State,* 187 Kan. 566, 358 P. 2d 765.

There is no statutory or constitutional right of refusal involved in the giving of handwriting exemplars—thus the framework in which the question at bar is presented is clearly distinguishable.

Before consideration of the issue presented, we should pause to observe that the provisions of the Fifth Amendment to the Constitution of the United States grant no greater protection against self-incrimination than does Section 10 of the Kansas Bill of Rights. (*State v. Faidley,* supra; and *State v. Hill,* 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750.)

While this court has not heretofore been confronted with the precise question presented herein, we believe our holdings in *State v. Faidley,* supra; and *State v. Freeman,* 195 Kan. 561, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981, bear upon principles sufficiently similar to be worthy of note. In *Faidley,* a prosecution for driving while under the influence of intoxi-

cating liquor, we considered the admissibility of defendant's performance of a "heel-to-toe balance test" and held it to be nontestimonial and not in violation of the defendant's privilege against self-incrimination. The testimony of a highway patrol officer, describing defendant's conduct, was held to be admissible. Concerning the protection of Section 10 of the Kansas Bill of Rights we held:

"The privilege against self-incrimination as contained in Section 10 of the Kansas Bill of Rights and the Fifth Amendment to the Constitution of the United States relates only to testimonial or communicative acts on the part of the person to whom the privilege applies, and does not apply to acts nontestimonial in nature as to the person asserting the privilege, even though such acts are compelled to obtain the testimony of others. . . ." (Syl. ¶ 1.)

Much to the same effect we held in *Freeman* that where an accused is placed in a "show up" at the police station and engaged in non-incriminating conversation for the purpose of voice identification his constitutional right against self-incrimination was not thereby violated.

While defendant's refusal in the instant case carries, of course, an inference of guilt, we do not believe it can be said to be a self-incriminating statement within the protective umbrella of the Fifth Amendment to the Constitution of the United States or Section 10 of the Kansas Bill of Rights. First, defendant's refusal to comply was a matter of choice, it was not compelled by the state like being placed in a "show up" as in *Freeman*. In fact, defendant chose to refuse in direct violation of the trial court's order even though refusal constituted a direct contempt of court. Second, the mere refusal of the test, standing alone, actually communicated nothing about the accused's knowledge of the case. Third, a verbal communication of the refusal discloses no more of the accused's protected knowledge than would mere conduct in totally failing to comply with the order or in intentionally distorting one's handwriting. The express refusal adds little or nothing to the failure to comply and it can scarcely be contended that evidence of the mere act of noncompliance falls within the protection against self-incrimination. The refusal is in substance an indication of the conduct of the accused and it is this conduct, rather than the oral utterance, which provides the basis for the inference of a consciousness of guilt. Thus, the refusal should be treated as an act or conduct indicating consciousness of guilt, rather than a self-incriminating statement. In refusing to supply exemplars, defendant was not communicating anything within the meaning of the Fifth Amendment.

He in no way cooperated with, or provided testimony for, his prosecutors by the refusal. On the contrary, he was being as uncooperative as possible and evidence of these actions and his intent to continue them was properly presented to the jury.

Federal courts, relying upon the proposition that identifying physical characteristics are outside the protection of the Fifth Amendment as established by *Gilbert v. California*, and *Schmerber v. California*, supra, have upheld the admissibility of evidence of a refusal to submit exemplars and the prosecution's right to comment thereon in jury arguments. Even though certain characteristics, such as voice and handwriting exemplars require the physical cooperation of the accused in order to obtain samples, the accused has not been permitted to frustrate the prosecution's right to such evidence by simply refusing to give the required exemplars.

In *United States v. Stembridge*, (5th Cir. 1973), 477 F. 2d 874, the court held that introduction of evidence showing that defendant attempted to avoid providing a valid handwriting sample by intentionally distorting his handwriting was not improper and did not violate defendant's privilege against self-incrimination. In deciding that issue, the court found no meaningful distinction between the affirmative act of intentionally distorting handwriting and verbally refusing to give an exemplar:

"An attempt to disguise the handwriting in an exemplar is, in effect, a refusal to provide an exemplar, for if an accused were free to disguise his writing, without any sanctions, exemplars would be worthless. . . ." (p. 876.)

In the *Stembridge* opinion the case of *United States v. Nix*, (5th Cir. 1972), 465 F. 2d 90, is cited for the proposition that:

". . . [I]t was not improper for the prosecutor in his closing arguments to the jury to comment upon the accused's refusal to provide a handwriting exemplar as directed by the court and, further, that it was not improper for the court to charge the jury that if it found beyond a reasonable doubt that the accused had failed to provide an exemplar as ordered by the court, it might infer that a comparison of such samples with a questioned signature would have been unfavorable to the defendant and favorable to the prosecution. . . ." (p. 876.)

Although in the *Nix* case the evidence was challenged on Fourth Amendment rather than on Fifth Amendment grounds, the *Stembridge* opinion reaffirms the proposition in the face of the Fifth Amendment challenge. (See, also, *United States v. Doe*, [2nd Cir. 1968], 405 F. 2d 436.)

In the analogous area of voice and line-up identifications, state

and federal decisions are in harmony with our holding. (See *Higgins v. Wainwright,* [5th Cir. 1970], 424 F. 2d 177, cert. den. 400 U. S. 905, 27 L. Ed. 2d 142, 91 S. Ct. 145; *United States v. Parhms,* [9th Cir. 1970], 424 F. 2d 152; *People v. Ellis,* 65 Cal. 2d 529, 55 Cal. Rptr. 385, 421 P. 2d 393; and *State v. Cary,* 49 N. J. 343, 230 A. 2d 384.)

We find no error in the admission into evidence of the defendant's refusal to provide the handwriting exemplars.

As a secondary issue the defendant contends that an instruction given by the trial court put undue emphasis on the defendant's refusal to provide a handwriting exemplar. The instruction in question informed the jury that if it found from the evidence that the defendant refused to fill out a handwriting exemplar; that fact could be considered in determining his guilt or innocence, but defendant's refusal, if he did refuse, was not sufficient in itself to establish guilt, but a circumstance which could be considered in determining the probabilities of defendant's guilt or innocence; and that the weight to which such circumstance was entitled was a matter for the jury's determination in connection with all of the facts brought out in the case.

In support of his argument defendant cites *State v. Tawney,* 81 Kan. 162, 105 Pac. 218; and *State v. Warner,* 129 Kan. 360, 282 Pac. 735. Defendant concedes that the later cases of *State v. Brown,* 203 Kan. 884, 457 P. 2d 130; and *State v. Murray,* 200 Kan. 526, 437 P. 2d 816, require that undue emphasis erroneously put on a certain matter of evidence must be prejudicial to justify reversal. Defendant claims that the instruction in question effectively established an inference of guilt, which was not warranted and, thus, resulted in prejudice necessitating reversal. The *Tawney* and *Warner* cases stand for the proposition that calling a jury's attention to an isolated fact and, thus, making it prominent is a dangerous practice, which may lead a jury to give an isolated fact greater significance than other unmentioned facts which may be of no less importance.

In *Brown* and *Murray* we expressed our disapproval of giving an instruction on circumstantial evidence for the reason that it placed undue stress on the force and cogency of circumstantial evidence. In each of those cases, however, we were unable to say that the giving of the instruction resulted in prejudice to the defendant's substantial rights. We believe the question raised con-

cerning the instruction in the instant case should be given similar treatment. In several cases previously mentioned herein an instruction on a defendant's refusal to give handwriting exemplars was approved, but we believe it to be the better practice not to emphasize this particular fact by instructing thereon—for the same reasons expressed in *Brown* and *Murray* with regard to an instruction on circumstantial evidence.

In the instant case identification of the handwriting in the spiral notebook and the notes discovered in defendant's apartment was clearly relevant evidence on the issue of defendant's possession of drugs with intent to sell. Defendant's refusal to provide exemplars was admissible evidence and, although an instruction as to the jury's consideration thereof, for the reasons stated, cannot be said to be the better practice we are unable to say that defendant's substantial rights were prejudiced so as to require a reversal.

This court has often said that errors which do not prejudicially affect substantial rights of an accused do not constitute grounds for reversal. (Vols. 1-3 Hatcher's Kansas Digest [Revised Edition—Perm. Supp.], Criminal Law, § 439.) This principle, we believe, is applicable to the present case.

The judgment is affirmed.

MILLER, J., not participating.