## Commonwealth v. Regula

*Fred A. Pierontoni, III, assistant district attorney,* for the Commonwealth.

*Joseph V. Kasper,* for defendant.

TOOLE, JR., J., February 26, 1986—On December 9, 1985, Gerald Frank Regula was found guilty of driving under the influence of alcohol in violation of 75 Pa.C.S. §3731(a)(1).

Regula has filed a timely motion seeking a new trial and/or arrest of judgment containing a single assignment of error. The matter has been briefed and is now before the court for determination.

The record reveals the following:

On July 23, 1985, Officer Michael Pavloski was dispatched to the intersection of Bennett Street and North Pennsylvania Avenue in Wilkes-Barre, Pa., on a report that a motor vehicle was blocking the intersection and that the driver was possibly intoxicated. Upon arriving at the scene, the officer discovered Regula seated behind the steering wheel of the motor vehicle. He asked Regula to produce some identification. The officer observed that Regula had bloodshot eyes, a strong odor of alcoholic beverage on his breath and that Regula fumbled with his identification cards as he attempted to produce them for the officer. The officer asked Regula to exit his motor vehicle and requested that he perform three field sobriety tests. The first two tests, walking a straight line, heel to toe, and touching his nose with outstretched arms, were taken voluntarily by Regula. He failed both. Regula refused to take the third test which consisted of picking up coins from the ground and identifying them. Thereafter, Regula was arrested and read his Miranda rights.

454

The issue we address today is whether a police officer who possesses a reasonable suspicion that the operator of a motor vehicle is driving under the influence of intoxicants based upon observing his bloodshot eyes, a strong odor of alcoholic beverage on his breath and overall poor coordination, must advise the operator of his Miranda[1] rights prior to administering field sobriety tests?[2] We believe he does not.

In support of his motion, Regula relies solely on the case of Commonwealth v. Bloom, 50 D.&C.2d 516 (1970). The facts are essentially the same as the case at bar. The officer noticed defendant had glassy eyes, slurred speech and a strong smell of alcohol on his breath. At the officer's direction, defendant performed a walk-the-line field test, the results of which indicated poor coordination and a stuporous condition. The trooper thereafter advised defendant of his constitutional rights and formally placed him under arrest.

The court in Bloom went on to hold "that [a] defendant was effectively denied his constitutional rights against self-incrimination when he was directed to submit to the "walk-the-line test [before being advised of his Miranda rights], and any evidence relating to his physiological responses thereto should have been suppressed . . . ." We, as well as a number of other courts in Pennsylvania, believe that Bloom was wrongly decided in that it misconstrued the requirements of Miranda v. Arizona, 384

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2. Field sobriety tests include but are not limited to walking a straight line, heel to toe, touching one's nose with outstretched arms, picking up coins from the ground and identifying them, etc.

U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The court in Commonwealth v. Kiely, 57 D.&C.2d 648 (1972), emphasized that Miranda warnings apply only to evidence of a *testimonial nature* gathered by the police. We believe that the administering of field sobriety tests are not designed to gather evidence of a testimonial nature, rather they are designed to gather evidence of a physical nature and therefore do not fall within the dictates of the Miranda decision. The United States Supreme Court case of Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826 (1966), 16 L. Ed. 2d 908, is instructive here. That case, decided the same year as Miranda, made a careful distinction between the Fourth and Fifth Amendment rights in driving under the influence cases, and held that the Fifth Amendment was inapplicable where the evidence in issue was *physical* (emphasis supplied) rather than oral statements. The court said, at page 764:

". . . both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, *to walk*, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." (Emphasis supplied.)

We acknowledge that the acts of walking a straight line, heel to toe, touching one's nose and picking up coins from the ground and identifying them are communications. However, we do not believe they fall within the purview of the privilege against self-incrimination. We believe the commu-

nications are more analogous to the type the United States Supreme Court confronted in United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). There, the accused was compelled to stand in a police line-up in order to be viewed by prosecution witnesses. The court emphasized that the compulsion was for the accused to exhibit his physical characteristics, not to disclose any knowledge he might have. The same scenario presents itself here. The officer did not attempt to illicit any oral or written communication which might incriminate Regula. He merely sought to observe his physical responses to certain tests. These communications are not covered by the Miranda decision.

Other Pennsylvania courts have voiced disagreement with the Bloom decision also. In Commonwealth v. Hoover, 55 D.&C.2d 34 (1971), a case decided a year after Bloom, the court held:

"While we have the greatest respect for that court [referring to Bloom], we do not think Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908, or Holt v. United States, 218 U.S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, require this result.

"So we hold an officer is not required to give the Miranda warnings before giving physical performance sobriety tests where he observes other indicia of the operator's being under the influence of intoxicants."

The court in Hoover relied in part upon a Kansas Supreme Court case, State v. Faidley, 202 Kan. 517, 450 P. 2d 20 (1969), which dealt with precisely the same problem we have here. The Faidley court stated:

"We have no doubt that compelling the defendant

to perform the coordination or sobriety test on the highway for observation by the patrolman involved no compulsion of the accused to give evidence having testimonial significance. At most, it was compulsion of the defendant to demonstrate his ability to walk, after being requested to walk in a particular manner. There was no forced communication by the defendant to disclose any knowledge he might have 'from his own mouth' (Miranda v. Arizona, supra, 384 U.S. 460, 86 S. Ct. 1620, 16 L. Ed. 2d 715.)

"This case presents no difference in principle from compelling Schmerber to provide a blood sample or Holt to put on the blouse, and, as in those instances, is not within the scope of the privilege."

Similarly, Commonwealth v. Kiely, 57 D.&C.2d 648 (1972), held that "coordination tests, being nontestimonial in nature, do not come under the protection of the Fifth Amendment with regard to custodial interrogation, and thus avoid the prohibition of the Miranda decision." The court in Commonwealth v. Rickey, Jr., 54 D.&C.2d 337 (1971), also noted that the Bloom court failed to make a distinction between a defendant's Fourth and Fifth Amendment rights.

In view of the above, we hold that, when a police officer possesses a reasonable suspicion that the operator of a motor vehicle is driving under the influence of intoxicants based upon objective criteria such as bloodshot eyes, a strong odor of alcoholic beverage on his breath and overall poor coordination, the police officer is not required to advise the operator of his Miranda rights prior to administering field sobriety tests.

Accordingly, we enter the following

## ORDER

And now this February 26, 1986, the motion of Gerald Frank Regula for a new trial or in the alternative for an arrest of judgment is denied and it is ordered and decreed that said defendant shall appear for sentencing on Thursday, March 27, 1986, at 9:30 a.m., in court room no. three.

The Luzerne County Adult Probation and Parole Department is directed to conduct a presentence investigation and file a report on or before Tuesday, March 25, 1986.