No. 69,474

STATE OF KANSAS, *Appellee*, v. GREGORY CASTORENO, *Appellant.*

(874 P.2d 1173)

Opinion filed May 27, 1994.

*Benjamin C. Wood*, special appellate defender, of Lawrence, argued the cause, and *Jessica R. Kunen*, chief appellate defender, of Topeka, was with him on the brief for appellant.

*Debra S. Byrd*, assistant district attorney, argued the cause, and *Mark T. Schoenhofer*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a direct appeal by Gregory Castoreno from his jury convictions of aggravated criminal sodomy and rape. The district court initially sentenced Castoreno to concurrent terms of 15 years to life. Upon his motion for modification, the district court reduced his sentence to a controlling term of six years to life.

On October 23, 1989, the victim, T.H., shared an apartment with Carrie Winters. Both T.H. and Carrie had daughters who lived with them. That evening, three people T.H. knew dropped by, and they were drinking. In addition, Allen Teetzel and Greg Castoreno, whom T.H. previously had not known, showed up.

T.H. had made arrangements to go visit a friend who lived about a mile away. She asked one of the people she knew to give her a ride, but he did not have enough gasoline. She accepted a ride with Teetzel and Castoreno, who said they were going in the right direction.

As they were walking to the truck, Teetzel and Castoreno pointed out the silhouette of a naked woman on the tailgate, and T.H. "said it looked pretty nice." Once in the truck, the two men started fondling T.H. She was sitting between them with Teetzel driving. T.H. testified that Teetzel touched her legs and that Castoreno felt her legs and her chest. When she realized that they were not going to her friend's place, T.H. kicked the passenger side door several times, but could not get past Castoreno.

Teetzel drove to a field. He and Castoreno told T.H. that she was being a tease and that they were going to teach her not to be a tease again. Castoreno held her by her waist and dragged her from the truck as T.H. kicked. Teetzel grabbed her ankles, Castoreno took her arms, and they put her on the ground.

Teetzel took off T.H.'s shorts and had vaginal intercourse with her while Castoreno held her arms and put his penis into her mouth. Then Castoreno had vaginal intercourse with T.H. while Teetzel held her arms and put his penis into her mouth.

T.H. testified that she was forced to have sex with Castoreno. She testified that she lay on top of Castoreno because she was scared and that was what he wanted. Castoreno expressed anger that Teetzel had ejaculated during intercourse because Castoreno

"was afraid that [T.H.] was going to go to the cops." Castoreno told T.H. that "he didn't want [her] to be with anybody else because [she] was his from now on," and he said that if he found out she was "with someone else" that "he was going to cut [her] tits off."

Teetzel had intercourse with T.H. a second time. Castoreno was not involved. He went over near the truck to "relieve" himself. T.H. testified that Castoreno wanted to have intercourse again, but that she dissuaded him by suggesting that she would "do this again Friday" if she could go home. Teetzel and Castoreno took T.H. back to her apartment.

Castoreno testified that while the group was still at the apartment, T.H. had reached up to put "handcuffs on the chandelier, and [he] noticed the bottom part of her breast." He asked her if she was wearing "anything under there," and she said she was not. He also testified that he "ducked under the table" and that she pulled the leg of her shorts to the side to show her pubic hair to him. He testified that she put her arms around him and Teetzel as they walked from the apartment to the truck and that "[s]he would jitter away" when he grabbed her buttocks. He testified that in the truck, he was caressing her breast and running his hand up her leg and that "[s]he seemed to enjoy it." He testified that she spread her legs further apart in response, put her arm around him, and kissed him. He testified that they drove about 15 minutes to get to the field because T.H. said, "Not in the truck," but consented to parking. Castoreno said that T.H. "was tipsy" and that "[s]he slid out of the truck." His account of what happened in the field differed significantly from T.H.'s only in that he testified that her participation was not forced.

Castoreno first contends that the district court erroneously instructed the jury about witness credibility. The district court gave the following instruction on witness credibility:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matters about which a witness has testified. You may take into account the witness' ability and opportunity to observe and know the things about which he has testified, the witness' memory, manner and conduct while testi-

fying, any interest the witness may have in the result of this trial, and the reasonableness of the witness' testimony considered in the light of all the evidence in this case. In other words, you are to reach conclusions which reason and common sense lead you to make from all the credible testimony and evidence in the case.

"A witness may be discredited by contradictory evidence, by a showing that he testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or failed to say or do something, which is inconsistent with the witness' present testimony. If you find that any witness has testified falsely on an important matter, you have a right to distrust the testimony of that witness on other matters, and you may reject all or part of the testimony of that witness, or you may give it such weight as you think it deserves."

The pattern instruction consists in its entirety of the first two sentences of the instruction given in this case. See PIK Crim. 3d 52.09.

No objection was made to this instruction.

"The standard of review applied to jury instruction error requires an objection before the jury retires, stating distinctly the matter objected to and the grounds for the objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414(3). *State v. Crabtree,* 248 Kan. 33, 39, 805 P.2d 1 (1991)." *State v. Thomas,* 252 Kan. 564, 576, 847 P.2d 1219 (1993).

This court has stated that "[a]n instruction is clearly erroneous when a reviewing court reaches a firm conviction that, if the trial error had not occurred, there is a real possibility that the jury would have returned a different verdict." *State v. Novotny,* 252 Kan. 753, 755, 851 P.2d 365 (1993).

Castoreno contends there is a real possibility that the jury would have returned a verdict of not guilty had the significantly expanded witness credibility instruction not been given. He reasons that the instruction tipped the balance against him in this case, which was a credibility contest between T.H. and him. He suggests that the balance was tipped by the instruction's unduly focusing the jurors' attention on his motivation for testifying falsely. He argues that the effect of the instruction was to make the jurors skeptical of the veracity of his testimony because his freedom depended on the outcome of the case. The instruction did not similarly affect the jurors' perception of the testimony of the State's witnesses because they did not have a similar stake in

the result. He argues that the instruction invited the jurors to disbelieve his testimony by using the masculine pronoun as well as by directing them to consider his interest in the outcome of the trial.

In *State v. DeVries*, 13 Kan. App. 2d 609, 617-19, 780 P.2d 1118 (1989), the Court of Appeals concluded that words added to the approved instruction on witness credibility were inappropriate and required reversal of DeVries' conviction of felony theft. The instruction which was given in DeVries' case stated:

" 'It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified. You may take into account the ability and opportunity of the witness to observe and know the things about which that witness has testified; i.e., memory, manner and conduct while testifying; any interest the witness may have in the outcome of this trial, and the reasonableness of testimony considered in the light of all evidence in this case.' " 13 Kan. App. 2d at 617.

However, in contrast to the present case, there was a specific objection made to the instruction. DeVries argued that the expanded witness credibility instruction unfairly impeached him by directing the jurors to be skeptical of his testimony due to his interest in avoiding criminal penalties. He also objected to the instruction's zeroing in on his inability to recall what happened. 13 Kan. App. 2d at 618. The Court of Appeals stated:

"Because of the limited testimony and the direct involvement of DeVries' 'memory,' we believe the additional wording in the instruction as given was inappropriate.

"The opportunity to mislead the jury or cause it to become unduly influenced by specific wording in an instruction which it has been told is 'the law that applies to this case' compels us to reach the conclusion that using the additional language objected to by DeVries was erroneous and requires reversal." 13 Kan. App. 2d at 618-19.

*DeVries* is the only case which has been brought to the court's attention in which the district court's embellishment of the pattern witness credibility instruction caused reversal of a criminal conviction. According to the Court of Appeals, "[t]he previous Supreme Court opinions where the additional wording of this instruction was considered arose out of cases where no objection

to the instruction was made at trial." 13 Kan. App. 2d at 617. Thus, the standard of review applied by the Court of Appeals materially differed from that applied by this court.

In *State v. Willis*, 240 Kan. 580, 731 P.2d 287 (1987), the witness credibility instruction given was similar to that given in the present case. Willis did not object to the instruction. This court expressed its preference for the pattern instruction over the expanded version which had been given by the district court but concluded that the expanded instruction was not clearly erroneous. The court stated:

"With the exception of PIK Crim. 2d 52.20 relative to eyewitness identification, the trend has been to eliminate instructions which focus on the credibility of certain testimony. See comments following PIK Crim. 2d 52.10 (defendant as a witness); PIK Crim. 2d 52.11 (number of witnesses); PIK Crim. 2d 52.14 (expert witness); PIK Crim. 2d 52.15 (impeachment); PIK Crim. 2d 52.17 (confession); and PIK Crim. 2d 52.19 (alibi). Whereas it would certainly have been the better practice to give an instruction along the lines of PIK Crim. 2d 52.09, we cannot conclude the giving of Instruction No. 5 was clearly erroneous." 240 Kan. at 587.

In *State v. Clements*, 241 Kan. 77, 80-81, 734 P.2d 1096 (1987), the following instruction was given:

" 'It is for you to determine the weight and credit to be given to the testimony of each witness. You have a right to use that knowledge and experience which you possess in common with men in general, in regard to the matter about which a witness has testified. You may take into account the witnesses['] ability and opportunity to observe and know the things about which he or she has testified, their memory, manner and conduct while testifying, and any interest they may have in the result of this trial, and the reasonableness of their testimony considered in the light of all the evidence in this case.' "

The court stated:

"A similar challenge was made to a similar instruction in *State v. Willis*, 240 Kan. 580, 731 P.2d 287 (1987). In *Willis*, as in the case before us, there was no contemporaneous objection to the instruction. We concluded in *Willis* that the instruction was not clearly erroneous although the better practice would have been to have given PIK Crim. 2d 52.09. The instruction before us is virtually identical to the first paragraph of the *Willis* instruction and we conclude that its giving is, likewise, not clearly erroneous." 241 Kan. at 81-82.

Castoreno also cites *State v. Blocker*, 211 Kan. 185, 505 P.2d 1099 (1973). He urges this court to consider it for the proposition

that an instruction which singles out a particular fact or aspect of the evidence may be misleading to the jurors and prejudicial to the defendant. Blocker complained of the district court's "refusing to instruct the jury as to the turbulent character of the deceased and his predisposition to violence." 211 Kan. at 195. The court found no error. It stated:

"In general, we believe it improper to single out or give undue emphasis to particular facts or pieces of evidence. (*State v. Tawney*, 81 Kan. 162, 105 Pac. 218; *State v. Adams*, 89 Kan. 674, 132 Pac. 171.) We adhere to what was said in *State v. Murray*, 200 Kan. 526, 437 P.2d 816:

'. . . This court disapproves any instruction by which the trial court attempts to stress the comparative weight or potency of any particular type of competent evidence.' (p. 529.)" 211 Kan. at 195-96.

In *State v. Murray*, 200 Kan. 526, 528, 437 P.2d 816 (1968), the issue was the district court's supplementation of the instruction on circumstantial evidence. Because the instruction directed the jurors to apply circumstantial evidence equally in considering innocence or guilt, the court determined that Murray had not been prejudiced by it. The court, however, did not want to be "understood as placing [its] approval on the instruction." 200 Kan. at 529.

Large portions of the challenged instruction given in this case apparently were taken from the instructions given in *Willis* and *Clements*. *Willis* and *Clements* are controlling. Although it was error to give the expanded instruction, it was not clearly erroneous to do so. The trial judge should not give an instruction that this court has found it is the better practice not to give, particularly where reversal is dependent upon the potential for unfair impeachment of the defendant in the peculiar circumstances of the case and whether the defendant objects to the instruction. We disapprove of the language of the instruction used in the present case concerning the credibility of certain witnesses beyond the specific language of PIK Crim. 3d 52.09.

Castoreno also contends that the district court erroneously instructed the jury on the elements of aggravated criminal sodomy. The district court orally instructed the jury, and then the written instructions were given to the jurors to take into deliberations

with them. There is no complaint about the written instruction on the elements which must be proved to establish the charge of aggravated criminal sodomy. The written instruction stated:

"Defendant is charged with the crime of aggravated criminal sodomy. Defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That defendant had oral copulation with [T.H.] without her consent;
2. That defendant used force or fear;
3. That this act occurred on or about the 24th day of October, 1989, in Sedgwick County, Kansas."

In its oral instruction, however, the district court failed to state that the oral copulation had to be without the consent of T.H. The district court stated:

"Defendant is charged with the crime of aggravated criminal sodomy. Defendant pleads not guilty. To establish this charge, each of the following claims must be proved: One, that defendant had oral copulation with [T.H.]; two, that the defendant used force or fear; three, that this act occurred on or about the 24th day of October, 1989, in Sedgwick County, Kansas."

K.S.A. 21-3506(a)(c)(i) states: "Aggravated criminal sodomy is: . . . sodomy with a person who does not consent to the sodomy or causing a person, without the person's consent to engage in sodomy, . . . [w]hen the victim is overcome by force or fear."

Castoreno argues that the lack of consent is an essential element of the offense and that the omission of an essential element from a jury instruction is clear and reversible error. He relies on *United States v. Noble*, 155 F.2d 315, 318 (3d Cir. 1946). He further argues that delivery of a corrected written instruction does not cure the defect in the oral instruction, citing *State v. Norris*, 10 Kan. App. 2d 397, 699 P.2d 585 (1985).

The State contends that it should suffice that the jury was instructed that it had to find that Castoreno used force or fear. The State quotes from 3 Wharton's Criminal Law § 288 (14th ed. 1980) in support of its argument that it was unnecessary for the district court to instruct the jury of the need to find lack of consent. The State relies on *State v. Redford*, 242 Kan. 658, 671, 750 P.2d 1013 (1988), for the principle that omission of an essential element in an instruction is not necessarily a reversible error.

In *Redford*, the district court instructed the jury that rape is "nonconsensual sexual intercourse," but failed to add that the victim must be overcome by force or fear. 242 Kan. at 671. The district court had omitted one of the essential elements of the offense, but, as in the present case, defense counsel did not object. Here is the court's entire discussion of this issue:

"Redford's defense consisted of presenting a completely different version of events than that given by Donna. His only response to the charges of multiple rape and sodomy was to answer '[n]o,' when his counsel asked him, '[A]t any time did you engage in any oral or anal sex with Donna without her consent?' Donna consistently testified that she submitted to each act of sexual intercourse without consent and because she was overcome by fear. There was no evidence of nonconsensual sexual intercourse under any circumstance other than fear.

"The question therefore is whether the verdict would have been different had the jury been instructed Donna must have been overcome by force or fear. Under the facts of this case, we think not. The error was therefore harmless." 242 Kan. at 671-72.

*Redford* is distinguishable from the present case in several respects. First, our reason for holding the error to be harmless in *Redford* is not applicable in the present case. Castoreno is charged in Count 2 with oral copulation with T.H. without her consent when she was overcome by force or fear (K.S.A. 21-3506[a][c][i]). There is no allegation by the State or T.H. that the oral sex was nonconsensual under any circumstances other than force or fear. Consequently, if T.H. did not consent, the jury could find Castoreno guilty only if it believed T.H. was overcome by force or fear. Even if there were evidence of nonconsensual oral sex under any circumstances other than force or fear, it would not be admissible unless the defendant was charged under K.S.A. 21-3506(a)(c)(ii) and (iii). Thus, the absence of such evidence does not render the erroneous instruction harmless.

Second, in *Redford*, only one essential element was omitted; here, of the two essential elements at issue, one was omitted from the instruction and the other one was incorrect. The instruction did not use the words of the statute or of the pattern instruction on the element involving force or fear. Both the statute and the pattern instruction concern a victim "overcome by force or fear." K.S.A. 21-3506(a)(c)(i); PIK Crim. 3d 57.08-B. The district court's

instruction required the jurors to find that the State proved "[t]hat defendant used force or fear." The jurors were not instructed that the State had to prove that T.H. was overcome by fear. With the State arguing that instructing as to force and fear eliminates the need to instruct about lack of consent, this deviation from the statutory language is significant. It seems conceivable, although pushing the limit, that jurors could have believed that Castoreno used fear, and even that T.H. was afraid, without believing that she had not consented to oral copulation. The State argues that what makes it seem unlikely that any of the jurors in this case did not believe that the oral copulation was without T.H.'s consent is that the jury was properly instructed that the State had to prove that the sexual intercourse was committed without her consent when she was overcome by force or fear. The evidence did not tend to show that the sexual intercourse was less welcomed by T.H. than the oral copulation. Thus, if the jury found that the sexual intercourse occurred without her consent when she was overcome by force or fear, then it follows that the jury also considered the oral copulation to have occurred in the same circumstances. If we accept the State's argument, there would be no need to instruct the jury on the State's burden to prove the essential elements of aggravated criminal sodomy. Instead, the court could simply instruct the jury that if it finds the defendant guilty of rape, it must also find him guilty of aggravated criminal sodomy. That is obviously unacceptable and violates fundamental justice. The jury has the duty to determine whether the defendant is guilty or not guilty and, in making that determination, must apply the law to the facts as it finds them. Consequently, the failure to properly instruct the jury as to the essential elements of the crime charged prevents the jury from rendering a proper verdict.

The most compelling distinction is the trial court giving the expanded credibility instruction in the present case. It compounded the error by inappropriately focusing on the defendant's testimony. Although not in itself reversible error, we must consider what cumulative effect the two erroneous instructions had on the defendant's substantial rights. In *State v. Lumbrera*, 252 Kan. 54, 56-57, 845 P.2d 609 (1992), this court stated:

"Even if no single error or abuse of discretion is sufficient to constitute reversible error, however, when viewed cumulatively in the totality of the circumstances herein, we are convinced that defendant did not receive a fair trial. As we stated in *Taylor v. State*, 251 Kan. 272, Syl. ¶ 6, 834 P.2d 1325 (1992):

'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' "

We cannot say with firm conviction that absent the two erroneous instructions, the jury would have returned the same verdict on the charge of aggravated criminal sodomy. Nor can we say the evidence against the defendant is overwhelming. Thus, the cumulative effect of the instructions was clearly erroneous and reversible error.

We agree with the defendant that the corrected written instruction did not cure the defective oral instruction. As pointed out in *Norris*, "the court did not read the instructions to the jury and it did not even instruct the foreman of the jury to do so. We cannot assume that despite this deficiency, the instructions were read by all members of the jury." 10 Kan. App. 2d at 402. The Court of Appeals considered that K.S.A. 22-3414(3) required the judge to instruct the jury at the close of the evidence and before argument to lessen the possibility that the jurors will be misled by argument. The Court of Appeals also considered that reading the instructions in open court protects the defendant's right to participate as well as ensuring that each member of the jury actually receives all of the instructions. The Court of Appeals relied on *Noble*, stating:

"In *United States v. Noble*, 155 F.2d 315, 318 (3d Cir. 1946), the court stated that an adequate written statement of the law is insufficient if it is not orally delivered as well. The court reasoned, in part, as follows:

'Moreover, we think that even if the information had contained a full recital of all the applicable legal principles the trial judge would not have fulfilled his duty in this regard merely by sending the information out with the jury to read if they chose to do so, during their deliberations. For not only are counsel and the defendant entitled to hear the instructions in order that they may, if they are incorrect, object to them and secure their prompt correction by the trial judge, but it is equally important to make as certain as may be that each member

of the jury has actually received the instructions. It is therefore essential that all instructions to the jury be given by the trial judge orally in the presence of counsel and the defendant. We conclude that the failure in the present case to instruct the jury upon the elements of the crime was error.' See also *Morris v. United States*, 156 F.2d 525, 531 n.4 (9th Cir. 1946)." 10 Kan. App. 2d at 400.

We agree with the reasoning of the Third Circuit Court of Appeals in *Noble*. Instructing the jury as to the applicable law is a fundamental duty and is required by K.S.A. 22-3414(3). The trial court did not fulfill that duty by incorrectly instructing the jury orally as to the essential elements of the crime charged and then sending a corrected written instruction for the jury to take into deliberations.

Finally, we consider if the district court erred in sentencing Castoreno to a term longer than the one imposed on his codefendant without stating reasons for the difference. Allen Teetzel entered a plea of nolo contendere to one count of aggravated sexual battery and one count of attempted aggravated criminal sodomy. Aggravated sexual battery is a class D felony, K.S.A. 21-3518(2). Attempted aggravated criminal sodomy is a class C felony, K.S.A. 21-3506(2) and K.S.A. 21-3301(c)(2). He was sentenced to a term of not less than 2 years nor more than 5 years for aggravated sexual battery; he was sentenced to a term of not less than 3 nor more than 10 years for attempted aggravated criminal sodomy. The terms were ordered to run consecutively for a controlling term of 5 to 15 years.

Castoreno was convicted of rape, a class B felony, and aggravated criminal sodomy, a class B felony. He originally was sentenced to terms of 15 years to life on each count with the terms to run concurrently. Castoreno's motion to modify his sentence was granted, and the district court ordered "that the defendant's sentence is reduced to six years to life." Castoreno contends that *State v. Bailey*, 251 Kan. 527, 834 P.2d 1353 (1992), requires the sentencing court to state reasons for such a disparity and that there was no rational, legitimate reason given in this case.

In *Bailey*, the court vacated the defendant's sentence due to disparity between it and the sentence of his codefendant, Jeffries. Bailey was convicted of four counts of aggravated robbery and

one count of felony murder. Jeffries pled guilty to three counts of aggravated robbery and nolo contendere to one count of aggravated robbery and one count of felony murder. Thus, both Jeffries and Bailey were sentenced on four counts of aggravated robbery and one count of felony murder.

A factor which the court considered to be of some importance in *Bailey* is that "the legislature recently has expressed its intent that similarly situated defendants should receive similar sentences by adopting sentencing guidelines." 251 Kan. at 531. The court's conclusion was expressed as follows:

> "We hold the trial court erred in not considering the disparity. The sentence is vacated and the case remanded to the trial judge for resentencing. We iterate that the trial judge is not bound to sentence the defendant in this case to the same or a lesser sentence than that given his codefendant. The trial court, however, must consider the sentence given the codefendant and, if a longer sentence is given, the reason for doing so should be set forth on the record." 251 Kan. at 531.

*Bailey* is not controlling in the present case because Teetzel and Castoreno were not sentenced for the same offenses. Their differing convictions were a result of Teetzel's entering into a plea agreement. Neither party cites any authority which offers guidance where, due to one defendant's entering pleas and one defendant's going to trial, codefendants were convicted of very different offenses for very similar conduct and culpability.

In *Bailey*, this court cited *Cochrane v. State*, 4 Kan. App. 2d 721, 610 P.2d 649 (1980), as a case in which codefendants who entered pleas received disparate sentences. In that case, the Court of Appeals majority vacated Cochrane's sentence. The Court of Appeals was disturbed by the record's being devoid of reasons for the sentence and by Cochrane's minimum sentence being 15 times greater than that imposed on a codefendant. In addition, the Court of Appeals stated: "It is also to be noted that plaintiff apparently was not offered similar plea bargaining possibilities as his codefendants, in violation of ABA Standards . . . ." 4 Kan. App. 2d at 727.

In *Bailey*, the plaintiff attempted a similar argument. The court dismissed the argument in the following words:

" 'An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court.' *State v. Edwards*, 250 Kan. 320, Syl. ¶ 7, 826 P.2d 1355 (1992). There is nothing in the record to indicate Bailey was interested in or was denied a plea bargain. Speculation does not prove abuse of discretion." 251 Kan. at 530.

In the present case, nothing has been brought to the court's attention from which a determination could be made as to plea agreement opportunities for Teetzel and Castoreno. As in *Bailey*, Castoreno has not met his burden of furnishing a record affirmatively showing prejudicial error in this regard.

Castoreno also contends that his sentence should be vacated due to the sentencing judge's complete silence on facts and factors which were considered in arriving at the disposition. See K.S.A. 21-4606. He cites *State v. Richard*, 252 Kan. 872, 882, 850 P.2d 844 (1993), in which this court concluded "that the trial court's total failure to consider the mandates of K.S.A. 21-4606 constituted an abuse of discretion, which require[d] that the sentence be set aside and that the defendant be resentenced in accordance with the proper statutory procedure." Castoreno notes that he was sentenced by the same judge who sentenced Richard. The judge's remarks at the time of imposing Castoreno's sentence consisted in their entirety of the following:

"Be the order, judgment, and sentence of the Court that you be taken into the custody by the Sheriff of Sedgwick County, and by him delivered to the custody of Secretary of Corrections to serve on Count 1 a term of not less than 15 years nor more than life, and on Count 2 not less than 15 nor more than life, said sentence is concurrent. Court will find the restitution as in the presentence investigation and Court will consider the SRDC Report when it is received."

Castoreno's motion to modify was granted, and his sentence was significantly reduced. The effect of subsequent modification of a sentence which was imposed without proper consideration of the statutory factors is not addressed.

In *State v. Webb*, 242 Kan. 519, 529, 748 P.2d 875 (1988), this court held that Webb's failure to raise the issue of denial of his right to allocution in the motion to modify his sentence constituted waiver of his statutory right to allocution. In *State v. Spencer*, 252 Kan. 186, Syl. ¶ 3, 843 P.2d 236 (1992), the waiver rule

announced in *Webb* was "limited to the facts of that case, in which an actual hearing was held on the motion to modify sentence." In the present case, there was a hearing on Castoreno's motion to modify. The record on appeal does not indicate that the issue of the sentencing judge's failure to consider the factors of K.S.A. 21-4606(2) at the time of sentencing was raised in Castoreno's written motion to modify, nor was it raised during the hearing; therefore it was waived.

The defendant's conviction of rape (Count 1) and resulting sentence is affirmed. The conviction of aggravated criminal sodomy (Count 2) is reversed and remanded for further proceedings.