NOT DESIGNATED FOR PUBLICATION

No. 119,414

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN EUGENE GARDNER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 27, 2019. Affirmed.


*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.


*Andrew R. Davidson*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., SCHROEDER and WARNER, JJ.


PER CURIAM: Justin Eugene Gardner appeals his convictions and sentence for two counts of felony battery on a law enforcement officer and one count of misdemeanor interference with a law enforcement officer. Gardner raises four challenges to his convictions: (1) the district court gave the jury an improper oral instruction when it stated the jury "must find [Gardner] guilty" if it had "no reasonable doubt as to the truth of each of the claims" the State was required to prove; (2) there was insufficient evidence to support his felony convictions for battery on a law enforcement officer; (3) the district

1

court erred in not instructing the jury on the lesser included offense of misdemeanor battery on a law enforcement officer; and (4) cumulative error deprived him of a fair trial.

We find the district court committed error when it orally instructed the jury using the term "must," but the error was harmless. In the light most favorable to the State, the evidence was sufficient to support Gardner's conviction for felony battery on the two law enforcement officers. We also find the district court committed error when it did not instruct the jury on the lesser included offense of misdemeanor battery on a law enforcement officer. However, there was no timely objection raised and the error was not clearly erroneous. Finally, we find there was no cumulative error. We affirm.

FACTS

Hutchinson Police Officer James Sanders was dispatched to an address to serve a protection from abuse order. When he arrived at the address, he parked along the street behind a car occupied by Matthew Troyer. Sanders exited his patrol vehicle, approached Troyer's car, and began speaking with Troyer. Shortly thereafter, Gardner approached Sanders on foot and identified himself as Cedric Gardner. A second officer, Raven Boettger, subsequently arrived and parked her patrol vehicle on the opposite side of the street. Sanders directed Gardner to speak with Boettger. Gardner spoke with Boettger by her patrol vehicle and told Boettger his name was Cedric Gardner.

Sanders contacted dispatch and was advised Cedric Gardner had an outstanding arrest warrant. At that time, Sanders did not know he had actually spoken with Justin Gardner; Cedric Gardner is Justin's brother. After dispatch confirmed the warrant, Sanders approached Gardner, told Gardner he had a warrant for his arrest, and attempted to arrest him, acting on the information Justin Gardner had identified himself to the officer as Cedric Gardner. Sanders tried to place Gardner in handcuffs, but Gardner pulled away from Sanders and ran into Boettger, who then attempted to restrain Gardner

2

by grabbing him around the waist. The officers told Gardner to stop but he continued to resist them. As the struggle continued, Gardner and the officers fell onto the street in front of Troyer's car, and Gardner kept struggling with the officers once they were on the ground. Sanders eventually used his taser to subdue Gardner and handcuffed him.

Both officers suffered injuries from the altercation. Boettger had a mild concussion, abrasions on her knees and fingers, and some scratching, redness, and bruising on her head and face. Sanders had abrasions on his knees and the palm of his right hand. His right hand was also swollen around the knuckles. Both officers testified Gardner was flailing his arms during the struggle and at various times pushed, grabbed, and/or punched the officers.

Gardner was charged with two counts of felony battery on a law enforcement officer in violation of K.S.A. 2016 Supp. 21-5413(c)(2)(B) for the injuries he caused to Boettger and Sanders, respectively, and one count of misdemeanor interference with a law enforcement officer in violation of K.S.A. 2016 Supp. 21-5904(a)(3) and (b)(5)(B). Gardner was convicted by a jury of all three charges. Gardner filed a motion for downward dispositional departure or, alternatively, downward durational departure. The district court denied Gardner's departure motion and sentenced him to a combined controlling sentence of 25 months' imprisonment with 12 months' postrelease supervision for all three counts.

ANALYSIS

*The district court's oral instruction on the State's burden of proof was erroneous, but the error was harmless.*

Gardner asserts the district court's reading of jury instruction number 5 was erroneous because it directed a verdict in favor of the State. In pertinent part, the district

3

court incorrectly read the instruction to the jury, stating: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *must* find Justin Gardner guilty." (Emphasis added.) However, Gardner concedes the district court provided the jury a correct written instruction, which stated, in pertinent part: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find Justin Gardner guilty." (Emphasis added.)

The State concedes the district court "misread the jury instructions" but claims the error was harmless and not clearly erroneous. Gardner did not object to the instruction when it was read or at any point prior to the jury retiring for deliberation. Under K.S.A. 2018 Supp. 22-3414(3), "[n]o party may assign as error the giving [of] an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction . . . is clearly erroneous." Here, Gardner complains the instruction was legally erroneous—specifically, it deprived the jury of its inherent power of jury nullification. This is likely an important distinction from other claims of instructional error because our Supreme Court has explained jury nullification is the jury's "raw physical power to *disregard both the rules of law and the evidence* in order to acquit a defendant." (Emphasis added.) *State v. McClanahan*, 212 Kan. 208, Syl. ¶ 3, 510 P.2d 153 (1973).

Gardner relies heavily on *State v. Smith-Parker*, 301 Kan. 132, 340 P.3d 485 (2014). The instruction at issue in *Smith-Parker* stated: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.'" 301 Kan. at 163. In reaching its decision, *Smith-Parker* expressly overruled *State v. Lovelace*, 227 Kan. 348, 607 P.2d 49 (1980). See *Smith-Parker*, 301 Kan. at 164. In *Lovelace*, the district court instructed the jury it "must" find the defendant guilty if it had no reasonable doubt as to all elements of the crime. 227 Kan. at 354. *Smith-Parker* held "the wording of the instruction at issue in *Lovelace*—'must'—and the wording at issue here—'will'—fly too close to the sun of

4

directing a verdict for the State. A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164. Based on *Smith-Parker*, the district court's oral instruction using the word "must" was erroneous.

*Smith-Parker* noted the instruction at issue was subject to clear error review because Smith-Parker did not object to it at trial. 301 Kan. at 163. However, the court declined to address whether the erroneous instruction was individually reversible. Rather, *Smith-Parker* "consider[ed] [reversibility] with other identified errors in [its] cumulative error discussion." 301 Kan. at 165. *Smith-Parker* addressed the strength of the evidence in its cumulative error analysis, but it is unclear if the strength of the evidence had *direct* bearing on the jury instruction error. See 301 Kan. at 167-68. There were additional errors the court considered in its cumulative error discussion. And as the court noted, "'[n]o prejudicial error may be found under the cumulative error doctrine if the evidence against the defendant is overwhelming. [Citations omitted.]'" *Smith-Parker*, 301 Kan. at 167. Still, our Supreme Court's explanation of the concept of jury nullification reflects the jury can acquit a defendant regardless of the strength of the State's evidence. See *Smith-Parker*, 301 Kan. at 164; *McClanahan*, 212 Kan. 208, Syl. ¶ 3. Thus, in determining whether this instruction is individually reversible clear error, the strength of the evidence does not appear to be a particularly relevant consideration.

Like Smith-Parker, Gardner also raises a claim of cumulative error. In *Smith-Parker*, the court considered four errors in its cumulative error analysis. Each of those errors had bearing on all of Smith-Parker's convictions. See 301 Kan. at 167-68. Here, Gardner was convicted of one count of interference with a law enforcement officer and two counts of battery on a law enforcement officer. This issue has bearing on all three convictions. However, his other arguments prevent this court from deferring its reversibility determination to the clear error discussion; Gardner's second and third issues are specific to his convictions of battery on a law enforcement officer. The instructional error in this issue is the only basis he asserts for reversal of his conviction of interference

5

with a law enforcement officer. Cumulative error naturally requires more than one error. See *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011). Accordingly, we must determine whether this limited oral instructional error requires reversal.

Here, the district court's oral instruction was *legally* erroneous. See *Smith-Parker*, 301 Kan. at 164-65. However, a single *legally* erroneous instruction is not necessarily *clearly* erroneous. See *State v. Betancourt*, 299 Kan. 131, 135-36, 322 P.3d 353 (2014). In *State v. Cameron*, 300 Kan. 384, 395, 329 P.3d 1158 (2014), our Supreme Court applied the clear error analysis to Cameron's claim about an instruction stating: "'Your concern in this case is determining if the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the court.'" Cameron argued the "instruction unconstitutionally shifted the burden to him to prove that he was not guilty." *Cameron*, 300 Kan. at 395. The *Cameron* court found the instruction was not clearly erroneous, but its analysis did not turn on the strength of the evidence. Rather, *Cameron* determined the instruction was not clearly erroneous when read with the other jury instructions as a whole. See 300 Kan. at 395-96.

*Cameron* is distinguishable because this issue turns on a one-word discrepancy between the district court's oral and written instruction. Gardner does not argue the written instruction—let alone the instructions as a whole—misstate the law. And he does not allege any error—oral or written—in the other instructions the district court gave the jury. Gardner makes no claim involving the jury's ability to understand the written instructions it *was actually given* and the propriety of those instructions in relation to the crimes for which Gardner *was actually charged*.

The State offers several persuasive reasons why this one-word discrepancy between the oral and written instructions would not affect the jury's understanding. The State's reasoning is generally consistent with the analysis in *Cameron* insofar as it asks this court to examine the effect of the instructional error in light of the surrounding

6

circumstances reflected in the record. See 300 Kan. at 395-96. As the State points out, the district court's written instruction was proper. It followed PIK Crim. 4th 51.010 (2017 Supp.), stating, in pertinent part: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find Justin Gardner guilty." The use of "should" is legally appropriate. See *Smith-Parker*, 301 Kan. at 164-65. Further, our Supreme Court strongly encourages the use of PIK instructions. See generally, *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009).

The district court provided the jurors with correct written instructions before it read them aloud, invited the jurors to read along if they wished, and informed the jurors they would be able to take the written instructions when they went to deliberate. Later, the district court sent the jurors to the jury room for deliberations with the "official instructions, the verdict form and all the exhibits." Prior to voir dire, the district court informed the entire jury pool of the basic requirements to serve on a jury. Among those requirements, the prospective jurors were informed they "must be able to read and understand English." The district court asked the entire jury pool, "[i]s there anyone who does not meet those minimum standards?" The district court then said, "I see no hands." Although the district court erred in its oral reading of the instruction, the State began its closing argument referring to the same instruction and correctly read it to the jury.

Gardner relies on *Miller v. State*, 298 Kan. 921, 933, 318 P.3d 155 (2014), for the proposition "that a correct written instruction does not overcome defects in a trial court's oral instructions because orally instructing the jury on applicable law is one of a trial court's fundamental duties." However, *Miller* involved a correct oral instruction but an incorrect written instruction. See 298 Kan. at 933. In *Miller*, the district court orally instructed the jury it must find the defendant not guilty if it had reasonable doubt as to the truth of any of the claims the State was required to prove; its written instruction replaced "'any'" with "'each.'" 298 Kan. at 925.

7

*Miller* held the correct oral instruction did not cure the defect in the written instructions because the jurors would not have appreciated the subtlety of the one-word difference in the district court's oral instructions. Rather, *Miller* agreed with the Court of Appeals' conclusion the jury "'almost certainly' would have relied on the written instructions." 298 Kan. at 933 (quoting *Miller v. State*, No. 103,915, 2012 WL 401601, at *6 [Kan. App. 2012] [unpublished opinion]). *Miller* found reversible error because there was a "one-word nuance between the two instructions and . . . the correct instruction was oral while the incorrect instruction was in writing and available to the jury during its deliberations." 298 Kan. at 934. In other words, *Miller* placed more weight on the written instructions because the discrepancy in the oral instruction was so small.

The specific language Gardner relies on from *Miller*—"a correct written instruction does not overcome defects in a trial court's oral instructions"—does not appear to articulate the type of bright-line principle Gardner suggests. 298 Kan. at 933. The *Miller* court explained: "In *State v. Castoreno*, 255 Kan. 401, 411-12, 874 P.2d 1173 (1994), we quoted [*State v. Norris*, 10 Kan. App. 2d 397, 699 P.2d 585 (1985),] in holding that a correct written instruction does not overcome defects in a trial court's oral instructions because orally instructing the jury on applicable law is one of a trial court's fundamental duties." *Miller*, 298 Kan. at 933.

However, *Castoreno* is also distinguishable because there "[t]he district court orally instructed the jury, and *then* the written instructions were given to the jurors to take into deliberations." (Emphasis added.) 255 Kan. at 407. Castoreno was charged with aggravated criminal sodomy. The district court's written instruction correctly stated the State was required to prove Castoreno had oral copulation with the victim without her consent. But the district court's oral instruction incorrectly stated the State was required to prove Castoreno had oral copulation with the victim. *Castoreno* found the district court's oral instruction was improper because it failed to instruct the jury on an essential element of the offense—a lack of consent from the victim. But *Castoreno* also noted the

8

district court incorrectly instructed the jury the State was required to prove the "'defendant used force or fear.'" 255 Kan. at 410. However, the State was actually required to prove the victim was "overcome by force or fear." 255 Kan. at 409. This erroneous instruction was included in both the written and oral instructions.

*Castoreno* considered both errors in the aggravated criminal sodomy instruction together, along with an additional error in another jury instruction. 255 Kan. at 409-11. *Castoreno* concluded "the cumulative effect of the instructions was clearly erroneous and reversible error." 255 Kan. at 411. *Castoreno* relied on *Norris* in concluding "the corrected written instruction did not cure the defective oral instruction." 255 Kan. at 411. However, in *Norris*, the district court "did not instruct the jury at the close of evidence and before closing argument," and it "did not read the instructions to the jury but simply submitted a copy of the written instructions to it." 10 Kan. App. 2d at 398.

As *Castoreno* noted, the *Norris* court's concerns were based on the statutory requirement of K.S.A. 2018 Supp. 22-3414(3)—"[t]he judge shall instruct the jury at the close of the evidence before argument." This is because doing so "lessen[s] the possibility that the jurors will be misled by argument." *Castoreno*, 255 Kan. at 411. And the *Norris* court "also considered that reading the instructions in open court protects the defendant's right to participate as well as ensuring that each member of the jury actually receives all of the instructions." *Castoreno*, 255 Kan. at 411.

Here, the district court provided the jury with correct written copies of the instructions and then read all its instructions in open court prior to closing arguments with the jury and Gardner present. The jury was not misled in closing arguments because the State used the correct language in its closing argument. But for a one-word discrepancy in the district court's oral jury instructions, it fulfilled both of the essential duties considered in *Norris*.

Further, *Castoreno* held:

"Instructing the jury as to the applicable law is a fundamental duty and is required by K.S.A. 22-3414(3). The trial court did not fulfill that duty by incorrectly instructing the jury orally as to the essential elements of the crime charged and then sending a corrected written instruction for the jury to take into deliberations." 255 Kan. at 412.

In this case, however, the district court's oral and written instructions correctly instructed the jury as to the essential elements of the crimes charged, and unlike *Smith-Parker* and *Castoreno*, Gardner's claim is not compounded by additional trial errors. See *Smith-Parker*, 301 Kan. at 165, 167-68; *Castoreno*, 255 Kan. at 409-11.

The instruction Gardner complains of relates only to the jury's ability to *disregard* the facts and law and acquit him notwithstanding the sufficiency of the State's evidence as to *all essential elements* of the crimes charged. But a jury should not be instructed on its inherent power of nullification. See *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011). A jury instruction that "[forbids] the jury from exercising its power of nullification" is legally erroneous. *Smith-Parker*, 301 Kan. at 164. But whether the jury would have interpreted the district court's oral instruction as forbidding it from exercising its power of jury nullification turns on its ability to appreciate the nuanced distinction in a single word —"must" versus "should"—within 1 of 11 jury instructions the district court read aloud. The jury had correct written copies of the instructions at the time they were read, and the jurors were invited to read along. The district court further informed the jury it would have the written instructions to refer to during its deliberations and provided the correct written instructions for its use. None of the jurors indicated any inability to read and understand English. The State's closing argument also provided a correct oral recitation of the instruction.

We find the reasoning in *Miller* persuasive albeit for the opposite reason Gardner relies on. In this case, there was a "one-word nuance between the two instructions and . . . the correct instruction . . . was in writing and available to the jury during its deliberations." 298 Kan. at 934. Based on all of the circumstances demonstrated in the record, the jury "'almost certainly' would have relied on the written instructions" in its deliberations. 298 Kan. at 933. Moreover, the jury did not submit any questions to the district court during its deliberations even though it was instructed it could do so. We observe no readily apparent indication from the record the jury was confused by or had any misapprehensions based on the one-word discrepancy between the oral and written instruction. This analysis is further supported by the State's correct reading of the instruction during its closing arguments. Accordingly, Gardner has failed to show clear error.

*Sufficient evidence supports Gardner's convictions for felony battery on a law enforcement officer.*

Gardner argues the State presented insufficient evidence to support his convictions for felony battery on a law enforcement officer. Specifically, he asserts the State failed to prove he knowingly caused bodily harm to the officers. "'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

Gardner's arguments on this issue are misguided. He essentially argues the nature of the officers' injuries and the degree of harm are inconsistent with the allegations he punched the officers as he attempted to flee. If Gardner had been charged with

11

aggravated battery on a law enforcement officer for knowingly causing *great bodily harm* to the officers, his arguments might be more persuasive. See K.S.A. 2018 Supp. 21-5413(b)(1)(A) and (d)(2)(A). But he was charged with felony battery on a law enforcement officer for knowingly causing bodily harm to the officers. See K.S.A. 2018 Supp. 21-5413(a)(1) and (c)(2)(B). The extent of the officers' injuries is irrelevant. Gardner spends a significant portion of his argument essentially asking this court to reweigh or resolve conflicting evidence or make credibility determinations, which we cannot do. He cites inconsistencies between Boettger's testimony on direct and cross-examination regarding whether Gardner landed any punches, and conflicting testimony from Troyer stating Gardner did not. These are all points beyond the scope of our review. See *Dunn*, 304 Kan. at 822.

Gardner's contention "the evidence shows that other factors may have caused the injuries all together," is largely conclusory. He also fails to support the point with citation to pertinent authority. Nevertheless, his assertion is contrary to the applicable law. K.S.A. 2018 Supp. 21-5202(i) provides, in pertinent part:

> "A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result."

"Causation in a criminal case has two core elements: cause-in-fact and legal causation. Cause-in-fact requires proof that but for the defendant's conduct, the result would not have occurred. Legal causation limits a defendant's liability to the reasonably foreseeable consequences of his or her conduct." *State v. Wilson*, 308 Kan. 516, 522, 421 P.3d 742 (2018).

In *State v. Gilbert*, No. 118,491, 2019 WL 1303075, at *1 (Kan. App. 2019) (unpublished opinion), *rev. denied* December 6, 2019, another panel of this court addressed a sufficiency of the evidence challenge for a conviction of aggravated battery against a law enforcement officer based on knowingly causing bodily harm to the officer with a motor vehicle. In *Gilbert*, the officer pulled Gilbert over for multiple traffic violations. He became suspicious based on Gilbert's responses to his questions and instructed Gilbert to turn off his vehicle. Gilbert refused and started to drive off. The officer reached into the vehicle, grabbed Gilbert's jacket, and attempted to grab the steering wheel. Gilbert tried to shove the officer away. While running alongside the vehicle, the officer grabbed Gilbert's left forearm and collar area. Gilbert abruptly hit his brakes, which allowed the officer to temporarily regain his footing and reach in toward Gilbert's chest. But Gilbert quickly drove off again, and the officer let go and rolled away from the vehicle. As a result, the officer suffered cuts to his arms and knees, a swollen wrist, and a torn uniform.

The *Gilbert* court explained "the State had to prove that Gilbert knowingly caused injury to [the officer]." 2019 WL 1303075, at *2. It rejected Gilbert's contention he did not cause the officer's injuries, reasoning:

> "It is foreseeable that an officer may attempt to forcibly remove a driver who fails to exit a vehicle after a lawful command is given to do so. It is also foreseeable that an officer may attempt to prevent the same driver from leaving the scene of a stop by grabbing the driver or reaching into the vehicle. It is also foreseeable that an officer would receive bodily harm from either being dragged by the moving vehicle or falling from it." 2019 WL 1303075, at *3.

The panel further explained in order to show Gilbert acted knowingly, "the State had to prove that Gilbert was aware of the nature of his conduct or the existing circumstances and he was aware that his conduct would have reasonably resulted in bodily harm." 2019 WL 1303075, at *3. The *Gilbert* panel concluded the evidence was

13

sufficient to show Gilbert acted knowingly because the officer's dash camera video showed "Gilbert knew [the officer] remained at his window even after driving several seconds, and a rational fact-finder could conclude Gilbert knew that bodily harm to [the officer] was reasonably certain to result if he kept driving while [the officer] was holding onto him or his car." 2019 WL 1303075, at *4.

*Gilbert*'s analysis is sound and highly analogous to this case. Here, the officers' testimony and video from Sanders' dash camera and Boettger's body camera show Gardner attempted to flee when the officers tried to arrest him. He struggled with the officers as they tried to restrain him in the middle of the street, flailing his arms, pushing, grabbing, pulling, and possibly punching the officers. And Gardner continued to struggle after he and the officers fell onto the street, grabbing Boettger's hair and punching or scratching her face. The scuffle caused Boettger to suffer a mild concussion, abrasions on her knees and fingers, and some scratching, redness, and bruising on her head and face, and Sanders had abrasions on his knees and right hand along with swelling around the knuckles on his right hand. Gardner does not dispute the officers' injuries were sustained during the struggle. But for Gardner's actions, the officers' injuries would not have occurred; thus, his actions were the cause-in-fact of the officers' injuries. See *Wilson*, 308 Kan. at 522.

The ensuing struggle and the injuries inflicted were also reasonably foreseeable consequences of Gardner's actions. It is reasonably foreseeable:

- An officer making an arrest will try to restrain a fleeing suspect;
- The officer may use physical force in so doing;
- The officer may use physical force as a means of self-defense including punching the suspect when he or she is flailing his or her arms and grabbing, punching, or pushing the officer;

14

- The officer will suffer injuries as a result of a suspect flailing his or her arms, and/or grabbing, punching, or pushing the officer;
- When multiple officers are attempting to restrain a suspect, one of the officers may inadvertently injure another officer;
- When two or more individuals are engaged in a physical struggle, they may fall to the ground in the course of the struggle;
- The officer will suffer injuries as a result of falling onto or being in contact with a hard, abrasive surface—such as a paved road—during the course of the struggle.

The evidence sufficiently establishes Gardner caused bodily harm to the officers because his actions were both the cause-in-fact and legal cause of their injuries. See *Wilson*, 308 Kan. at 522; *Gilbert*, 2019 WL 1303075, at *3.

Gardner did not have to know he caused the officers' injuries; rather, the injuries had to be a reasonably certain result of his conduct. See *Gilbert*, 2019 WL 1303075, at *3-4. Sanders' dash camera video shows the incident occurred on a paved street, and Gardner stood in the street talking to the officers for approximately one-and-a-half minutes before Sanders attempted to arrest him. Sanders' dash camera video shows Gardner initially struggled with the officers for approximately 10 seconds, during which he and the officers pushed each other back and forth and started to lose their balance. After Gardner and the officers fell to the ground, he continued to struggle. Sanders' dash camera video shows a portion of Boettger's lower body in front of Troyer's car and she appears to be getting pushed or pulled while in contact with the pavement. Boettger's body camera video shows Gardner struggling with the officers for approximately 15 seconds while on the street. A reasonable fact-finder could conclude Gardner was aware of the circumstances existing and the risks created when he tried to escape by pushing, pulling, and falling on the ground.

15

Both videos reflect Gardner was actively involved in the struggle and, based on his conduct and the circumstances, it was reasonably certain the officers would suffer bodily harm—particularly, the abrasions to their hands and knees—as a result of falling onto and/or being pushed or pulled along the pavement during the course of the struggle. We find the evidence was sufficient to show Gardner knowingly caused bodily harm to both officers. See *Gilbert*, 2019 WL 1303075, at *3-4.

*The district court's failure to instruct the jury on the lesser included offense of misdemeanor battery on a law enforcement officer was not clearly erroneous.*

Gardner argues the district court erred in failing to instruct the jury on the lesser included offense of misdemeanor battery on a law enforcement officer under K.S.A. 2018 Supp. 21-5413(c)(1)(A). When analyzing jury instruction issues, this court follows a three-step process: (1) determine if it can or should review the issue, i.e., whether this court has jurisdiction and whether the party preserved the issue; (2) consider the merits to determine whether error occurred; and (3) determine if the error requires reversal, i.e., whether it can be deemed harmless. Whether a party has preserved a jury instruction issue affects the reversibility inquiry at the third step. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

Gardner admits he did not request a lesser included instruction at trial; therefore, he must show the district court's failure to give the instruction was clearly erroneous. See K.S.A. 2018 Supp. 22-3414(3). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3). [Citation omitted.]" *Betancourt*, 299 Kan. at 135. The clear error determination must review the

16

impact of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. See *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

But before we can consider whether the instruction was clearly erroneous, we must consider whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. *State v. Plummer*, 295 Kan. 156, 168, 283 P.3d 202 (2012). Gardner correctly argues the instruction is legally appropriate under K.S.A. 2018 Supp. 21-5109(b)(1) (a lesser included offense is "[a] lesser degree of the same crime"). See *State v. Williams*, 308 Kan. 1439, 1457, 430 P.3d 448 (2018). Gardner relies on *State v. Haberlein*, 296 Kan. 195, 204, 290 P.3d 640 (2012), in support of his argument the instruction was factually appropriate. *Haberlein* is still good law. See *Williams*, 308 Kan. at 1458. But, his reliance on *Haberlein* is slightly misplaced. The *Haberlein* court found an instruction for second-degree murder as a lesser included offense of first-degree murder was factually appropriate because the elements of the crimes are identical, less premeditation, and "there . . . was at least some evidence of each of the other elements of first-degree premeditated murder." 296 Kan. at 204.

Whether Gardner's actions amounted to misdemeanor or felony battery on a law enforcement officer largely turns on whether he caused bodily harm to the officers. See K.S.A. 2018 Supp. 21-5413(a)(1)-(2), (c)(1)(B), (c)(2)(B), and (g)(3)(A)-(B). However, there is one important distinction insofar as misdemeanor battery on a law enforcement officer requires knowing *physical contact* with the officer. See K.S.A. 2018 Supp. 21-5413(a)(2), (c)(1)(B), and (g)(3)(A). Felony battery on a law enforcement officer does not explicitly require physical contact in causing bodily harm to the officer. See K.S.A. 2018 Supp. 5413(a)(1), (c)(2)(B), and (g)(3)(B). Still, Gardner is correct the evidence at trial unequivocally established he knowingly engaged in physical contact with the officers, and strongly shows he did so in a rude, angry, or insulting manner. Had the jury been instructed on misdemeanor battery on a law enforcement officer, the evidence

17

would have been more than sufficient to support the conviction. See K.S.A. 2018 Supp. 21-5413(a)(2), (c)(1)(B), and (g)(3)(A). Therefore, the lesser included instruction was appropriate and should have been given.

However, Gardner has not shown the failure to give the instruction was clear error. He has not firmly convinced this court the result would have been different had the instruction been given. See *Cooper*, 303 Kan. at 771. The evidence unequivocally shows the officers suffered multiple injuries, i.e., bodily harm, as a direct result of the struggle. And *all* of the officers' injuries were sustained during the struggle. Gardner's actions were unquestionably the cause-in-fact of the bodily harm to both officers. See *Wilson*, 308 Kan. at 522.

There was overwhelming evidence Gardner *acted* knowingly and knowingly *caused* the officers' injuries. He was intentionally fighting with them as he attempted to flee and escape from their custody. See K.S.A. 2018 Supp. 21-5202(i); *Gilbert*, 2019 WL 1303075, at *3-4. In fairness, *some* of the officers' injuries—Boettger's concussion and Sanders' swollen knuckles—may not have been reasonably foreseeable given the time and manner in which the events unfolded. Sanders' dash camera video shows Sanders, while attempting to restrain Gardner, almost immediately began throwing punches as Gardner tried to flee, but his first punch missed Gardner and struck Boettger's head. Sanders threw several more punches before they fell onto the street. And Sanders continued punching Gardner while they were on the ground, but some of his punches missed and his hand struck the pavement. However, all of the actions were caused by Gardner's initial attempt to flee and resist arrest.

It was reasonably foreseeable the officers would restrain Gardner and use physical force in so doing. Based on Gardner flailing his arms and grabbing, punching, pushing, or pulling the officers, it was reasonably foreseeable the officers' use of physical force may have included punching Gardner as a means of self-defense. It was also reasonably

18

foreseeable one of the officers may have inadvertently injured the other as the struggle progressed. Additionally, it was reasonably foreseeable the officers would suffer injuries as a result of coming into contact with the pavement and that Sanders would *continue* throwing punches as Gardner *continued* to resist with one or more of Sanders' punches missing and hitting the pavement.

In any event, the extent and number of the officers' injuries is essentially irrelevant. The State was only required to prove Gardner knowingly caused bodily harm to the officers. See K.S.A. 2018 Supp. 21-5413(a)(1) and (c)(2)(B); *Gilbert*, 2019 WL 1303075, at *2-4. Here, the evidence unequivocally showed Gardner started the altercation by resisting arrest and was the cause-in-fact of *all* the officers' injuries. The evidence overwhelmingly shows the vast majority of the events were reasonably foreseeable consequences of Gardner's actions.

The State presented overwhelming evidence for which the jury could convict Gardner of felony battery on a law enforcement officer. See K.S.A. 2018 Supp. 21-5202(i); K.S.A. 2018 Supp. 21-5413(a)(1) and (c)(2)(B); *Wilson*, 308 Kan. at 522; *Gilbert*, 2019 WL 1303075, at *2-4. The record also reflects the parties' arguments were appropriate based on the crimes charged and the district court properly instructed the jury on all elements of the charged offenses. The entirety of the district court's written instructions were correct. In light of the record as a whole, Gardner has not firmly convinced this court the jury would have reached a different verdict had the lesser included offense instruction been given. Gardner has failed to show clear error. See *Cooper*, 303 Kan. at 771; *In re Care & Treatment of Thomas*, 301 Kan. at 849.

*No cumulative error*

Gardner argues even if none of the errors he complains of are individually reversible, the cumulative effect of those errors deprived him of a fair trial. The test for

19

cumulative error is whether the totality of the circumstances establish the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). The court will find no cumulative error when the record fails to support the errors defendant raises on appeal. *State v. Marshall,* 303 Kan. 438, 451, 362 P.3d 587 (2015). A single error cannot constitute cumulative error. *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

As a preliminary matter, cumulative error does not apply to Gardner's interference with a law enforcement officer conviction because his first issue is the only error he asserts on appeal in relation to that offense. However, that instructional error is harmless, and a single harmless error is not reversible cumulative error. *Williams*, 299 Kan. at 566. Gardner has shown two harmless errors in relation to his felony battery on a law enforcement officer convictions. But those errors do not aggregate. The error in Issue I relates to jury nullification, which occurs when the jury acquits the defendant despite finding all elements proven beyond a reasonable doubt. See *Smith-Parker*, 301 Kan. at 164. The jury could have done so regardless of whether it was instructed on felony or misdemeanor battery on a law enforcement officer.

The potential prejudicial effect of failing to give the lesser included instruction—misdemeanor battery on a law enforcement officer—turns on whether the jury would have more likely found Gardner made physical contact with the officers in a rude, angry, or insulting manner but did not knowingly cause their injuries. If the jury had been given a lesser included offense instruction and convicted Gardner of misdemeanor battery on a law enforcement officer, it would have found he did not knowingly cause the officers'

20

bodily injuries. Therefore, the jury necessarily would have found the State had not proven all the elements to support the felony conviction. However, because the evidence supporting Gardner's convictions is overwhelming, they cannot be reversed based on cumulative error. See *Smith-Parker*, 301 Kan. at 167.

Affirmed.